[No. 7,240.—In Bank.]
May 30, 1882.

## WILLIAM M. NEILSON v. JAMES R. LEE.

REAL ESTATE BROKER—AGENT—SALE—COMMISSIONS—CONSTRUCTION OF CONTRACT.—By an agreement in writing, the plaintiff was authorized by the defendant, at any time within sixty days, to sell his mine for a sum not less than sixty-five thousand dollars; and within the time specified, made a written agreement with H., a responsible purchaser, in the name of his principal, for the sum of seventy-five thousand dollars—H. to have twenty days to examine the title, and if the same was not good

and to the satisfaction of H., the agreement to be void. At the same time the plaintiff made a separate written agreement with H. that if the defendant did not sign the agreement on or before twelve o'clock M., August 26, 1878, H. should be released from the contract. The defendant refused to sign the agreement within the time specified, and H., on that ground, notified the plaintiff that he withdrew from the contract. The Court found that the plaintiff did not procure a purchaser.

*Held:* By refusing to ratify the agreement the defendant refused to sell the property to H. at the price, and on the terms which he had agreed with the plaintiff to sell it; and this being so, the finding that the plaintiff did not procure a purchaser able and willing to purchase the property is against the evidence.

APPEAL from a judgment for the defendant and an order denying a new trial in the Third District Court of the County of Alameda. McKEE, J.

The complaint alleges:

That on the thirtieth day of June, A. D. 1878, at the City and County of San Francisco, said plaintiff and defendant executed and entered into a written agreement, of which the following is a copy:

"Whereas, James R. Lee, of the City and County of San Francisco, is seised at law and in equity of certain mining claim on the Comstock lode, being part of the ground now occupied by the Mexican Gold and Silver Mining Company, and some time since standing in the official records in the name of V. A. Houseworth, and being in length along the side lode eighty-three feet and three inches, be the same more or less. It is agreed between the said James R. Lee and William M. Neilson, that for and in consideration of the sum of five (5) dollars in United States gold coin, to him duly paid, the receipt of which is hereby acknowledged, the said Lee agrees to appoint the said Neilson to act as his sole agent in the sale of said mining claim, upon the terms following:

"First—That out of the proceeds of any sale effected of said claim, the said Lee is first to receive fifty thousand ($50,000) dollars in gold coin, and any balance obtained over that amount, to be equally divided between the said Lee and Neilson, but no sale to be effected that does not yield to the said Lee a total of fifty thousand ($50,000) dollars gold coin, as his share. But, notwithstanding, if the proceeds of such

sale amount to no more than fifty thousand (50,000) dollars, the said Lee will pay to the said Neilson five per cent. of that sum, or twenty-five hundred ($2500) dollars.

"Second—That no expenses are to attach to the said Lee, unless a sale is effected; and not then, unless his share of the proceeds exceed fifty thousand ($50,000) dollars.

"Third—That this agreement is to remain in force for sixty days from the first day of July, 1878, with the right retained by said Neilson to renew it for thirty days thereafter.

"(Signed)                    JAMES R. LEE,
                    "WILLIAM M. NEILSON."

That afterwards, to wit, on the twenty-first day of August, A. D. 1878, at the said City and County of San Francisco, the said plaintiff and defendant executed and entered into another written agreement, of which the following is a copy:

"SAN FRANCISCO, June 30th, 1878.

"Whereas, James R. Lee, of the City and County of San Francisco, is seised at law and in equity of a certain mining claim on the Comstock lode, being the following described property, situated in the County of Storey, State of Nevada, to wit: A certain mining claim on the Comstock lode, being the undivided one sixth interest in the five hundred feet of ground on said Comstock lode, formerly owned by Valentine A. Houseworth, and being the property now owned by the said James R. Lee: It is agreed between the said James R. Lee and William M. Neilson, that for and in consideration of the sum of five dollars ($5) in United States gold coin, to him duly paid, the receipt of which is hereby acknowledged, the said Lee does appoint the said Neilson to act as his sole agent in the sale of said mining claim, upon terms following:

First—That out of the proceeds of any sale effected of said claim, the said Lee is first to receive sixty-five thousand dollars ($65,000) in gold coin, and any balance obtained over that amount, to be equally divided between the said Lee and Neilson.

Second—That no expenses are to attach to the said Lee, unless a sale is effected, and not then, unless his share of the proceeds exceed sixty-five thousand dollars ($65,000).

Third—That this agreement is to remain in force for sixty

days from the first of July, 1878, with the right retained by the said Neilson to renew it for thirty days thereafter.

"Signed) "JAMES R. LEE,

"WM. M. NEILSON."

But this last-named agreement was not to be effectual to change the former agreement as to the amount the said plaintiff was to receive for his services in selling said property, and, as evidence of this, this said plaintiff and defendant entered into another written agreement, signed by defendant, of which the following is a copy:

"SAN FRANCISCO, August 21st, 1878.

"WM. M. NEILSON, Esq.—*Dear Sir:* It is of course understood and agreed between us, that the settlement for your services in the sale of my property on the Comstock lode is to be on the basis of the first agreement, which allows you one half of all that may be realized from any sale over fifty thousand dollars ($50,000).

" (Signed) JAMES R. LEE."

Plaintiff further alleges that on the twenty-third day of August, 1878, and while plaintiff was the authorized agent of the defendant to negotiate the sale of the property herein described, and authorized to execute an agreement for the defendant with person or persons for that purpose, defendant, by his said agent, negotiated a *bona fide* sale of said property, and executed a written agreement with the purchaser, H. A. Hedger, of which the following is a copy:

"This agreement made this twenty-first day of August, 1878, between James R. Lee, of Oakland, Alameda County, State of California, by his sole agent (and attorney-in-fact) William M. Neilson, of the City and County of San Francisco, and H. A. Hedger, of the said City and County of San Francisco, witnesseth: That the said James R. Lee agrees to sell and convey to the said H. A. Hedger, at such time as the said Hedger may desire, within twenty days from August 21, 1878, the one sixth undivided interest in that mining ground and claim, situate in the Virginia Mining District. in the County of Storey, and State of Nevada, adjoining the claim of the Ophir Silver Mining Company on the north, and containing five hundred (500) feet, and known as the ground and claim

of the Atchison Gold and Silver Mining Company, and being the premises conveyed to the said James R. Lee by deed from V. A. Houseworth, dated the twenty-ninth (29) day of September, A. D. 1874, and acknowledged the twenty-first (21) day of December, A. D. 1874, by his attorney-in-fact, before Edward Chattin, Commissioner for the State of Nevada, and residing in San Francisco, California, and recorded December 24th, A. D. 1874, in Liber 34 of Deeds, in the said County of Storey, State of Nevada, and to make and execute unto the said H. A. Hedger, a good and sufficient deed and transfer, conveying the absolute title of said property to him.   In consideration whereof, the said H. A. Hedger agrees to pay to the said James R. Lee, or his said agent and attorney, on receiving said deed duly executed, conveying the title aforesaid, the sum of seventy-five thousand (75,000) dollars in United States gold coin.   It is further agreed by and between the parties hereto, that the said H. A. Hedger may have twenty days from said twenty-first day of August, 1878, in which to examine and pass upon the title to said premises, and if the said title is not good and sufficient, either in whole or in part, and to the satisfaction of the said H. A. Hedger, then this agreement becomes void and of no force or effect whatever.

"In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written.

"(Signed)

"H. A. HEDGER,
"JAS. R. LEE,
"By his sole agent and attorney in fact,
WM. M. NEILSON."

Plaintiff further alleges that defendant agreed, at the time of executing the agreement last recited, in writing, through his said agent the plaintiff, with the said H. A. Hedger, of which agreement the following is a copy:

"I, Wm. M. Neilson, the undersigned, do hereby agree with H. A. Hedger, that if James R. Lee my principal, does not sign, ratify and approve the agreement made this day by the said Neilson, as his agent and attorney, with said H. A. Hedger, on or before 12 o'clock noon, August 26, 1878, then that

the said H. A. Hedger be released from all obligations therein, and from all covenants and obligations contained in said contract.

"August 23, 1878.                        "WM. M. NEILSON."

That notice of this agreement was given in writing by plaintiff to defendant August 23, 1878, in the city and county of San Francisco, of which the following is a copy:

"MR. JAMES R. LEE: You will take notice that the parties purchasing your claim in the Comstock lode, in the State of Nevada, from me, under my contract with you, empowering me to make the sale of your claim, have reserved the right to avoid the purchase from me, unless the instrument of sale from me to them is confirmed and executed by you by 12 o'clock (noon), August 26, 1878. The said instrument is now at the office of your attorney, Mr. Byrne, awaiting your signature.

"Friday, August 23, 1878.

                        "Respectfully,
                                "WM. M. NEILSON."

Plaintiff further alleges that on the twentieth day of August, 1878, he served on the defendant a draft copy of the first recited agreement made with the said Hedger, and at the same time delivered to said defendant a written notice, of which the following is a copy:

                "SAN FRANCISCO, August 20, 1878.

"JAMES R. LEE, ESQ.—My Dear Sir: It affords me satisfaction to inform you that I have made sale of your claim on the Comstock Lode for the sum of $75,000 U. S. gold coin. In order that you may understand the whole transaction I inclose you a copy of the agreement, which I have, under my powers, agreed to sign on your behalf. There are some expenses to be paid, the paying of which will be greatly to your advantage, which can be arranged amicably between us. Though your assent to the agreement is not necessary, yet I am desirous of having it; but failing in that, I shall proceed to sign the contract without delay.

                "Sincerely yours,
                                "WM. M. NEILSON."

*A. C. Searle* and *E. C. Marshall,* for Appellant.

That the interpretation placed by the Court below upon the words used in the contract between plaintiff and defendant, that the plaintiff should "effect a sale" before being entitled to payment for his services, is forced, strained, altogether inadmissible, and not warranted by law. The plaintiff did "effect a sale," as far as it was physically possible for an agent to effect one, who had not his principal's power of attorney to execute a deed. (*Phelan* v. *Gardner,* 43 Cal. 310; *Middleton* v. *Findla,* 25 id. 82; *Blood* v. *Shannon,* 29 id. 395; *Gonzales* v. *Broad,* Pacific Coast Law Journal, vol. 7, p. 288; *Barnard* v. *Mannot,* 3 Keyes' N. Y. 204; *Kock* v. *Emmerling,* 22 How. U. S. 69.)

An agent may be entitled to his compensation though he has not accomplished the thing he was employed to do, if he was prevented from doing it by the act, or failure to act, of his principal. (See Story on Agency, 392, and notes; Parsons on Contracts, 89, 90.) An agent has the undoubted right to require his principal to perform any reasonable act within his power necessary to or in furtherance of a consummation of the sale.

*Baggett & Platt,* also for the Appellant.

A sale was effected. A broker need be only a procuring cause; he can not conclude a sale; his power is limited to the bringing of seller and purchaser together. When he has done this he has effected a sale, within the meaning and intent of his contract. (*McCreery* v. *Green,* 38 Mich. 184; *Phelan* v. *Gardner,* 43 Cal. 310; *Glentworth* v. *Luther,* 21 Barb. 145; 4 Daly, 143; *Barnard* v. *Monnot,* 3 Keyes, 204; *Rice* v. *Mayo,* 107 Mass. 552; *Love* v. *Miller,* 53 Ind. 300.)

If Neilson had authority to execute the Hedger-Neilson agreement (and he had such authority, *Rutenberg* v. *Main,* 47 Cal. 214), his acts were the acts of Lee, and no new condition was imposed by Hedger in requiring Lee's ratification of these acts. Lee was not asked to do a single thing not already done by him through Neilson. That said sale failed to be completed through the fault of Lee.

"It is a well-settled and sound principle of law, that he

who prevents a thing being done shall not avail himself, to his own benefit, of the non-performance which he has occasioned." (*Cook* v. *Fiske*, 12 Gray, 491; *Rice* v. *Mayo*, 107 Mass. 550; *Delaplaine* v. *Turnley*, 44 Wis. 31; *Coleman's Ex'rs* v. *Meade*, 13 Bush, [Ky.], 363; *Mooney* v. *Elder*, 56 N. Y. 238; *Bailey* v. *Chapman*, 41 Mo. 536; *Budd* v. *Zoller*, 52 id. 238; *Keys* v. *Johnson*, 68 Pa. St. 42; *Reed* v. *Reed*, 82 id. 420; *Green* v. *Lucas*, 31 L. T. Rep. [N. S.] 731; affirmed 33 id. 584; *Phelan* v. *Gardner*, 43 Cal. 310; *Middleton* v. *Findla* 25 id. 76; *Blood* v. *Shannon*, 29 id. 393.)

A principal can not relieve himself from his liability for commissions by a capricious refusal to consummate the sale. (*Delaplaine* v. *Turnley*, 44 Wis. 31; *Kock* v. *Emmerling*, 22 How. [U. S.] 69; *Moses* v. *Bierling*, 31 N. Y. 463.)

Lee cannot plead his want of absolute title as an excuse for not paying Neilson's commission. By his written contract with Neilson he had given notice to Neilson and all the world that he was "seised at law and in equity." (*Budd* v. *Zoller*, 52 Mo. 242, 246.)

*Robinson, Olney & Byrne*, for Respondent.

The third point made by the appellant is that an agent may be entitled to his compensation, although he has not accomplished the thing he was employed to do, if he was prevented from doing it by the act or failure to act, of his principal. The facts in this case do not show that the plaintiff was prevented by his principal from accomplishing the proposed sale. The finding of the Court below upon this point that "the plaintiff did not effect any sale of said property, nor did he procure a purchaser able and willing to purchase the same, is fully sustained by the evidence." (*Phelan* v. *Gardner*, 43 Cal. 310.)

Under the contract between the plaintiff and the defendant, the plaintiff had no authority to enter into the contract made by him with Hedger. The contract should have expressly provided that time was of the essence of the contract; that Hedger should purchase if the title was a good possessory title, and should have contained other provisions necessary for defendant's protection. Time is not of the essence of a contract to convey real property unless expressly so stated in

the written agreement. (*Brown* v. *Covillaud*, 6 Cal. 566; *Steele* v. *Branch*, 40 id. 3–11–13; *Vassault* v. *Edwards*, 43 id. 458; *Dillon* v. *Masterton*, 39 N. Y. Sup. Ct. 133.)

The Hedger-Neilson contract substantially provides:

1. That Lee, without any consideration whatever, should bind himself to sell and convey the property at a future time.

2. That he should bind himself to give "a good and sufficient deed and transfer conveying the absolute title" of the property.

3. That Lee should bind himself positively to sell, while Hedger was under no obligation whatever (as we, with due respect, contend,) to purchase.

4. That Lee should sign and ratify a contract prepared by Hedger's attorneys, and so framed as to omit provisions materially necessary for the protection of his interests, and which imposed no responsibility upon Hedger. Neilson clearly had no authority under Lee's contract with him to impose such a burden upon Lee's property.

The testimony shows that the defendant was ready and willing, at all times, to sign or to ratify an agreement of sale by which his rights would be properly protected. No such agreement was ever offered to him by plaintiff for signature or ratification. But no such ratification was necessary, nor was it contemplated by the parties, or demanded by the terms of the contract. "In an action on a contract involving a condition precedent, the proofs must show performance of the condition, or else a waiver thereof." (*Livesey* v. *Omaha Hotel Co.*, 5 Neb. 50; Story on Agency, § 329; *Hill* v. *Grigsby*, 35 Cal. 656; *Englander* v. *Rogers*, 41 id. 420; *Bohall* v. *Diller*, id. 532; *Kelly* v. *Mack*, 45 id. 303; C. C. P., § 457.)

SHARPSTEIN, J.:

This is an appeal by the plaintiff from a judgment entered in favor of the defendant upon the following findings of fact:

"1. On or about the thirtieth day of June, 1878, the plaintiff and the defendant entered into a contract in writing, by which the defendant appointed the plaintiff his agent in the sale of a certain mining claim in the State of Nevada, which contract was to remain in force sixty days from the first

day of July, 1878, with the privilege to the plaintiff to renew it for thirty days thereafter.

"2. By the terms of said contract, if plaintiff effected a sale of said mining claim within the time specified, for more than $50,000, he was to receive as compensation for his services as agent in effecting said sale one half of the amount realized thereby, over and above said sum of $50,000.

"3. Plaintiff was not to receive any compensation for his services, nor were any expenses incurred in the transaction to be chargeable against defendant, unless a sale was effected by plaintiff under said written contract.

"4. About the twentieth of August, 1878, plaintiff entered into negotiations with one H. A. Hedger for the sale to him of said property for the sum of $75,000 in United States gold coin.

"5. These negotiations were carried on between the said parties until about the twenty-seventh day of August, 1878, when they were terminated by a notification to plaintiff from Hedger, that he declined to purchase the property.

"6. The plaintiff did not effect any sale of said property, nor did he procure a purchaser able and willing to purchase the same."

It is claimed by the appellant that the last finding and the last clause of the finding next preceding the last are contrary to the evidence. There is positive evidence of the pecuniary ability of Hedger to purchase the property, which is not contradicted, so that there is no conflict of evidence upon that question.

His willingness to purchase the property is evidenced by an instrument in writing between him and the plaintiff, in which he agrees to purchase it at the price and on the terms upon which the plaintiff was authorized by the defendant to sell it. In that agreement there is a stipulation that Hedger might have twenty days from its date in which to examine and pass upon the title to the property.

The agreement between the plaintiff and defendant was, by its terms, to remain in force for a period of sixty days from its date, and had, at the date of the agreement between the plaintiff and Hedger, more than twenty days to run.

Now it appears further by the evidence that Hedger insisted

upon a ratification of the agreement between him and the plaintiff by the defendant within a specified period, and that the defendant refused to ratify it within that period, and that Hedger at the expiration thereof notified the plaintiff that he, Hedger, considered himself released from any further obligation to purchase the property. By refusing to ratify said agreement the defendant, we think, refused to sell the property to Hedger, at the price and on the terms which the defendant had agreed with the plaintiff to sell it. And if that be so, the finding that the plaintiff did not procure a purchaser able and willing to purchase said property, is against the evidence. The evidence shows that the sale was defeated by the refusal of the defendant to ratify the agreement made by his agent, the plaintiff, with Hedger, and we are unable to find anything in the evidence which tends to show that Hedger was not both able and willing to purchase at the price and upon the terms fixed by the defendant in his agreement with the plaintiff.

Judgment and order denying a new trial reversed.

MORRISON, C. J., McKINSTRY, ROSS, THORNTON, JJ., concurred.

MYRICK, J. dissented.

McKEE, J., dissenting:

It is familiar law that a real estate broker is not entitled to commissions for making a sale of real estate for his principal, unless he strictly performs the services required of him according to the authority conferred upon him.

In the case in hand, the defendant, claiming to have been "seised at law and in equity" of a mining claim in the State of Nevada, authorized the plaintiff by an instrument in writing, to sell the claim at any time within sixty days from the first day of July, 1878, for such a sum of money as would net him sixty-five thousand dollars; and any surplus which might be realized from the sale, he agreed to divide equally between the plaintiff and himself, and to pay out of his share of the surplus whatever expenses might be incurred in making the sale.

No other terms were prescribed. Under this authority the plaintiff, as agent and attorney in fact of the defendant, on August 21, 1878, entered into an agreement in writing with one Hedger to sell and convey to him "the absolute title to the property," within twenty days from the date of the agreement, for the sum of seventy-five thousand dollars, payable on condition that Hedger would be satisfied with the title and that the defendant would sign, ratify and approve the agreement.

Hedger was able to pay. Negatively it appears that there was no fault in the title to the property; that Hedger took no steps to satisfy himself about it, and that he never demanded of the defendant to consummate the alleged purchase by a conveyance of the title. It also appears, affirmatively, that the defendant refused to sign the agreement in writing between Hedger and the plaintiff, and that the former, on August 27, 1878, notified the latter, that he considered himself released from all obligation to purchase.

There was, therefore, no actual sale of the property. Hedger was not a purchaser ready and willing to buy, nor did the defendant refuse to consummate a purchase by the conveyance of his title; he did refuse to sign the agreement in writing between Hedger and the plaintiff: but he was not bound by his contract with the plaintiff to sign any agreement in writing which the latter might make with a person to whom he offered the property for sale; and in refusing to do what he was not bound by his contract to do, the defendant was not at fault.

As an agent, the plaintiff could only bind his principal within the scope of his authority. It was not within the scope of his authority to make a conditional or contingent sale. Such a purchase, the defendant was not bound to accept. He had the right to determine for himself whether the offer to purchase upon such a contingency, as was agreed to by his agent, was made in good faith, and to refuse or accept the offer. And Hedger was not bound to purchase if the contingency which he presented, did not happen.

As, therefore, the plaintiff's claim to compensation was, by his own unauthorized act, made dependent upon an act which his principal was not bound to perform, no recovery can be

had upon it. A real estate broker is not entitled to recover commissions for a conditional sale of real estate which fails of actual consummation by no fault or fraud of the owner of the property. (*Hinds* v. *Henry*, 36 N. J. L. 333; *Walker* v. *Tirrell*, 101 Mass. 257.) Therefore I think the judgment and order of the Court below was correct, and should be affirmed.