[L. A. No. 3967. Department Two.—August 24, 1917.]

## W. J. PURCELL, Respondent, v. EMIL FIRTH, Appellant.

BROKER'S COMMISSIONS — PAYMENT UPON "CONSUMMATION" OF SALE — WHEN EARNED.—Under an agreement to pay a real estate broker the regular commission on a sale of real estate "when the same is consummated," the commission is earned when a purchaser ready, willing, and able to buy is produced, regardless of the consummation of the sale by the passing and recording of the deed.

APPEAL from a judgment of the Superior Court of Imperial County, and from an order denying a new trial. Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

Sheldon Borden, and Richard J. Culver, for Appellant.

Eshleman & Swing, and Conkling & Brown, for Respondent.

MELVIN, J.—W. J. Purcell, as assignee of Purcell-Sargent Land Company (a copartnership), sued successfully for a commission alleged to have been earned under a contract for the sale of real estate. Defendant appeals from the judgment and from an order denying his motion for a new trial.

It appears from the testimony that L. J. Rose, desiring to purchase a rancho in Imperial County known as "Tract 85, Township 15 S., Range 15 East, S. B. M.," inquired of Purcell-Sargent Land Company regarding the price for which the property could be purchased. The land belonged to Emil Firth, a resident of Los Angeles. L. J. Rose, the prospective purchaser, was living in San Diego. The real estate agents resided in El Centro, Imperial County. On receiving

the request for information regarding the land, Mr. Sargent, one of the partners, telephoned to Mr. Firth, who said he would accept $140 per acre for the ranch upon certain terms. When this information was communicated to Mr. Rose he deposited one thousand dollars with the agents. Subsequently, on the same day, April 12, 1913, Mr. Firth sent a telegram to the agents and also a letter. The following quotations from the latter writing give the terms of the proposed sale:

"Supplementing our telephone conversation, I enclose herewith copy of a night letter which I am sending you tonight, and which I herewith confirm.

" 'Will take for tract eighty five forty-four thousand eight hundred dollars on terms of seventy five hundred cash, eighty six hundred fifty dollars one year, eighty six hundred fifty dollars two years, subject mortgage of twenty thousand dollars, as per phone. See letter mailed today. Wire if offer is accepted.'

"As stated in the message, I will take $44,800 or $140 per acre for the 320 acres, . . . on the following terms: $7,500 cash; $8,650 on or before one year and $8,650 on or before two years, with 7% interest payable semi-annually, to be evidenced by notes and secured by trust deed on said property. . . .

"I will pay you the regular commission of 5% on the sale when the same is consummated.

"My price on the land is $150 per acre, and this offer is made subject to immediate acceptance only. If you make the sale, have the purchaser deposit 10% of the purchase price, or all of the first payment, in the First National Bank in escrow, and have the bank wire me to that effect."

The letter also described in detail a mortgage on the land for twenty thousand dollars which the purchaser would have to assume in case a sale should be made. The sum of one thousand dollars paid by Mr. Rose before the receipt of the writings was turned over to the First National Bank, the escrow-holder named in the letter from the owner of the land. This payment was made on the 14th of April, 1913, and appellant insists (while respondent denies) that the remaining six thousand five hundred dollars necessary to make up the sum of seven thousand five hundred dollars specified in the letter as the amount of the first payment was never deposited with the bank in compliance with the contract.

This contention of appellant is without merit. It is true that for some time the sum of one thousand dollars was all the money that the bank had received on behalf of Mr. Rose, but this was known to Mr. Firth, who made no objection, until the deficiency had been made up. Mr. Firth had deposited his deed in escrow as promised. In his letter to the bank dated April 17, 1913, he wrote, after giving his escrow instructions: "If you cannot comply with the foregoing instructions, please return all papers, together with $1000.00 deposited with you by Mr. Rose for my account, less expense." This, according to respondent, amounted to a waiver of any failure strictly to perform on the part of L. J. Rose, but in truth no waiver was necessary, as no particular time had been fixed for the payment of the first installment. In a letter to the Purcell-Sargent Land Co., dated April 30, 1913, defendant did mention the fact that the amount deposited was not in compliance with the terms of the proposed sale, but he did not withdraw from the transaction at that time, and indeed when he wrote the letter of April 30th the entire amount had been placed in the hands of the escrow-holder and there it remained until after Mr. Firth had ordered that all of the papers be returned to him. Before defendant's repudiation of the agreement, Mr. Rose and his wife had executed and delivered to Mr. Firth's escrow agent the trust deed and notes necessary to carry out the purchaser's part of the agreement. The buyer was ready, able, and willing, as the court was justified in concluding from the evidence, to accept defendant's deed and to take the land subject to the mortgage. He entered upon the property and expended a considerable sum in preparing a part of the land for the planting of crops, but he abandoned further work of this sort when he discovered, through an abstract company's report, that there was an outstanding unrecorded lease to the land which would not expire until the middle of June, 1913. This cloud on the title had not been disclosed by the vendor in his letter setting forth the terms upon which he would dispose of the property. There was also a pending suit against Henderson, the lessee, by the owner, to foreclose a chattel mortgage, and the abstract company refused to certify a clear title because in the pleadings in that case the unrecorded lease was referred to. While it does not clearly appear whether or not Mr. Firth's attention was called to the specific objection to the title subject to

the lease, by his letters to the bank dated May 3 and May 8, 1913, he declared that he would not complete the sale unless Mr. Rose was willing to take the land with such title as he was able to convey. That there was objection to the title he did know; that he had failed to disclose the existence of the lease in his letter to plaintiff's assignor was undoubtedly true; and the court was justified in believing that he had no intention of clearing the title.

Under the foregoing facts, the court properly found that plaintiff's assignor, in pursuance of its agreement, did find and procure a buyer ready, willing, and able to purchase the property on the terms and conditions fixed by the owner, and that, therefore, the commission had been earned.

There is no force in appellant's contention that the commission was to be paid only upon the passing and recording of a deed from Firth to Rose. Great stress is laid by appellant's counsel upon the language in the letter to the land company, "I will pay you the regular commission of five per cent on the sale *when the same is consummated.*" It is learnedly argued that since the word "consummate" means "to bring to completion; to finish; to perfect; to achieve," there could be no fee earned by the agent until the bargain had been executed beyond recall by both parties to the agreement. It is cheerfully conceded that ordinarily an agent earns the fee when he brings to the seller a purchaser willing and able to accept the offered transfer upon the stipulated terms, but counsel say that this is quite different from the usual contract. To this respondent's representatives reply that the words "regular commission" impart a promise to pay when the ordinary services for which real estate agents are hired have been performed. There can be no doubt that contracts may be, and frequently are, executed by the terms of which a real estate agent's commission is made to depend upon the actual sale of the property involved. We think that the contract before us, however, fairly interpreted, is not the sort of agreement which appellant would have us find it to be, but that it is a broker's and his client's usual arrangement for the payment of the former's compensation for securing a desirable buyer. It greatly resembles the writings considered by the district court of appeal in *Shepherd-Teague Co.* v. *Hermann,* 12 Cal. App. 394, [107 Pac. 622]. The agent's claim in that case was based upon two written instru-

ments executed by the defendant, in one of which the payment of a commission is promised "in the event this exchange is made" and in a modifying document a definite sum of money is specified as the amount to be paid "in the event the trade is consummated." No exchange of properties ever took place, yet the district court of appeal held that the agreement was the usual one between the intending seller of real property and his broker, such as is described and analyzed in such cases as *Phelps* v. *Prusch*, 83 Cal. 627, [23 Pac. 1111]. It was justly decided that the language of the agent's authorization must be read in the light of the evident purpose of employing him, which was the securing of a valid and binding acceptance of his principal's offer; that having done this he had performed the only consummation within his power; and that the final consummation involved in the exchange of deeds was one over which the plaintiff had no control. In the case at bar the agent had not only procured a purchaser, but that buyer had partially executed the agreement of sale by meeting all of the proposals contained in the instructions of the intending seller to the holder of the documents in escrow. Clearly the fee had been earned.

Whether the sale was prevented by the failure of perfect title or by the mere will of the vendor makes no difference. In either case the compensation had been earned by the agent. (*Smith* v. *Schiele*, 93 Cal. 144, [28 Pac. 857]; *Phelan* v. *Gardner*, 43 Cal. 306–311; *Justy* v. *Erro*, 16 Cal. App. 519–522, [117 Pac. 575]; *Neilson* v. *Lee*, 60 Cal. 555; *Stanton* v. *Carnahan*, 15 Cal. App. 527–529, [115 Pac. 339].)

No other alleged errors merit discussion.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.