[L. A. No. 7006.   In Bank.—May 3, 1923.]

# W. S. TWOGOOD, Respondent, v. M. J. MONNETTE, Appellant.

[1] BROKERS' COMMISSIONS—WHEN EARNED.—In this state it is well established, in the absence of any specific agreement to the contrary, that a broker employed to sell real or personal property has earned his commission when, within the life of his contract, or any extension thereof, he has produced a person who is ready, willing, and able to purchase the property on terms satisfactory to the seller, and has obtained a binding and valid contract for a sale on the terms proposed by the seller, or has brought the seller and buyer together and thus enabled them to enter into a contract of sale, or has produced such a purchaser who has verbally accepted the seller's terms and offered to enter into a written contract embodying the said terms and binding upon both parties. In such cases the broker's right to commission accrues when the contract of sale is executed or when opportunity to make such contract is given the seller, and the broker becomes entitled to his commission even though the seller is unable or unwilling to complete the sale.

[2] ID.—WRITTEN CONTRACT OF SALE—WHEN UNNECESSARY.—A written contract between the seller and the purchaser is not essential to the recovery of the broker's commission if he has produced to the seller a purchaser who is ready, willing, and able to purchase upon the terms proposed by the seller and who has agreed to those terms and is willing and offers to enter into a binding written contract.

[3] ID.—MODIFICATION OF TERMS OF SALE—RIGHT OF BROKER TO COMMISSION.—Where the seller accepts modified terms of sale offered by the purchaser this departure from the terms of the agent's authorization to sell affords no ground for refusal to pay him his commission.

[4] ID.—DRAFT OF CONTRACT—NEGOTIATIONS.—In this action to recover a broker's commission upon a sale of certain stock it is

---

1. When has a broker earned his commission, notes, 139 **Am. St. Rep.** 225; 44 **L. R. A.** 321.

Right of broker to commission on failure of purchaser to comply with binding contract of sale, note, 11 **Ann. Cas.** 786.

2. Necessity of securing written contract from purchaser to entitle real estate broker to commissions, note, 46 **L. R. A. (N. S.)** 129.

held that while the draft of contract of sale did not embody the precise terms orally agreed to, and lends color to the contention of the defendant that the transaction was merely in a state of negotiation, it was not conclusive evidence of the latter fact, and the jury was justified in concluding that the drafting of the agreement in this form was merely an act of bad judgment on the part of the agent and attorney, and without legal effect in view of the subsequent turn of events.

[5] ID.—RIGHT OF PLAINTIFF TO RECOVERY.—It is held in this case that the plaintiff did all that was required of him by the terms of his employment to entitle him to his commission, namely, he produced a *bona fide* purchaser ready, able, and willing to take and pay for the stock on terms satisfactory to the defendant, his employer.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Donald Barker and William H. Neblett for Appellant.

Newlin & Ashburn for Respondent.

KERRIGAN, J.—Plaintiff in this action sued to recover the sum of twenty-five thousand dollars on a contract under which he was employed as a broker to find a purchaser for the capital stock of the Bankers Oil Company. He alleged in his amended complaint that the contract of employment was made on November 4, 1919, and that on November 5th he produced a purchaser who was ready and able to make the purchase on the terms and conditions thereof. The jury returned a verdict for the plaintiff, fixing the amount of recovery at fifteen thousand dollars. From the judgment entered upon the verdict the defendant has appealed.

It is mainly contended on behalf of defendant that the evidence was insufficient to justify the verdict. Defendant insists that, admitting the contract of employment as claimed, and the correctness of the amount of the verdict under such contract, the evidence did not show that the plaintiff performed the obligations on his part required, by producing a purchaser who was willing to make the purchase on the terms proposed by the defendant.

Prior to November 4, 1919, the defendant had represented to the plaintiff and his correspondents that he and other members of his family held more than half of all the issued stock of the oil company mentioned, and that the holders of the remainder of that stock had agreed to sell it whenever defendant sold that which he controlled, and that defendant could and would deliver, in consequence of such understanding, all of the issued stock of the oil company for the sum of three hundred thousand dollars. On November 4th he executed the following writing: "This will certify that in case of sale of the Bankers Oil Company by W. S. Twogood to any one of his clients, he and his associates are to receive the sum of twenty-five thousand ($25,000) dollars for bringing to me the parties to the deal." At the same time he required plaintiff to agree that, in the event a sale was made of the corporate stock and the sum of twenty-five thousand dollars paid as commission, plaintiff would pay to defendant the sum of ten thousand dollars; in other words, divide his commission in that proportion. Plaintiff had, previous to the date of the commission agreement, been in touch with certain associates in San Francisco, and on the morning of the 5th of November he produced at the office of the defendant Alfred G. Wilkes, who was introduced as the proposed purchaser. The commission agreement contained no express statement of terms upon which the sale was to be made, and when Wilkes appeared in defendant's office he was advised by defendant that the price for the stock was three hundred thousand dollars and the terms would be cash, i. e., that payment for the stock would be due upon its delivery. After some further negotiations Wilkes suggested that he pay on that day on account of the purchase price the sum of five thousand dollars, and the balance within thirty days in order to give him sufficient time to make an examination of the title to the property. To this defendant agreed. Wilkes at that interview stated that he was busy "and would like to adjourn the conference until 2 o'clock in the afternoon, when he would return and close the matter up"; Wilkes stated that he would take the property on the terms last mentioned. At the noon hour Wilkes told C. G. Osborn that he had agreed to buy the stock from Monnette, and delegated to him the duty of calling on

Monnette at 2 o'clock for the purpose of closing the deal in his behalf upon the terms stated. At 2 o'clock, in company with Twogood, Osborn called on Monnette and stated to him the terms of the sale as theretofore agreed upon with Wilkes, to which statement Monnette assented. Some further matters, such as taxes and oil on hand, were discussed and agreed to at that time by Monnette and Osborn, as had previously been done by Wilkes. Thereupon all terms of the sale having been expressly assented to by both sides, it was suggested by Osborn that the same be reduced to a written contract and that he would have Guerney E. Newlin prepare the same and would return with it as soon as possible. To this Monnette likewise agreed. Newlin telephoned Monnette before he started the preparation of the contract and again during its preparation, and in the course of his conversation went over in detail the terms of the agreement which had been made between Monnette on the one hand and Wilkes and Osborn on the other, being the same terms above mentioned, and Monnette stated to Newlin that those were the terms to which he had agreed. The completion of the contract was delayed until about 4 o'clock that day. Meanwhile, and at about 3:30 o'clock, defendant, after conference with two callers, determined that he would not proceed with the deal. When he was informed by plaintiff that Osborn was ready to bring the contract over he stated to plaintiff: "It will not be necessary for him to come up. I don't care to see him, as the deal so far as you and Mr. Wilkes and Mr. Osborn are concerned is off. I cannot make it. I cannot complete the deal." Defendant further stated to plaintiff that he had just been informed by his recent callers that they had a written contract with the holders of the minority stock for the purchase of the same, and for that reason it was no longer possible for him to perform his contract. Some days later Osborn, acting under instructions from Wilkes, called upon defendant and offered to take whatever stock might be owned or controlled by defendant at a price proportionate to the total price of three hundred thousand dollars agreed upon as the sale value of the whole amount of issued stock. Defendant refused to deal further with Osborn or Wilkes, and on the

latter occasion admitted that he had given an option to other parties covering his own stock.

Do these facts make out a case where the broker has, during the life of his contract of employment, produced a purchaser ready and willing to buy the property offered to be sold at the price and on the terms fixed by his principal (no question of the ability of the proposed purchaser being involved)?

[1] In this state it is well established, in the absence of any specific agreement to the contrary, that a broker employed to sell real or personal property has earned his commission when, within the life of his contract, or any extension thereof, he has produced a person who is ready, willing, and able to purchase the property on terms satisfactory to the seller, and has obtained a binding and valid contract for a sale on the terms proposed by the seller, or has brought the seller and buyer together and thus enabled them to enter into a contract of sale, or has produced such a purchaser who has verbally accepted the seller's terms and offered to enter into a written contract embodying the said terms and binding upon both parties. In such cases the broker's right to commission accrues when the contract of sale is executed, or when opportunity to make such contract is given the seller, and the broker becomes entitled to his commission even though the seller is unable or unwilling to complete the sale. (*Ernst* v. *Ganahl*, 166 Cal. 493 [137 Pac. 256]; *Gardiner* v. *McDonogh*, 147 Cal. 313 [81 Pac. 964]; *Phelps* v. *Prusch*, 83 Cal. 626 [23 Pac. 1111].) [2] It is also established law in this state that a written contract between the seller and the purchaser is not essential to the recovery of the broker's commission if he has produced to the seller a purchaser who is ready, willing, and able to purchase upon the terms proposed by the seller and who has agreed to those terms and is willing and offers to enter into a binding written contract. The broker has performed his duty and has earned his commission regardless of whether a written contract is actually entered into or whether the sale is ever consummated by the delivery of the property and the payment of the purchase price. (*Gunn* v. *Bank of California*, 99 Cal. 349 [33 Pac. 1105]; *Merwin* v. *Shaffner*, 31 Cal. App. 374 [160 Pac. 684].)

[3] It is urged in behalf of the defendant that the broker did not establish his right to his commission for the reason that his contract required him to produce a purchaser for cash, whereas Wilkes insisted that he be given thirty days within which to pay. But the record also shows that the defendant, at his interview with Wilkes, agreed to this modification, if such it may be called. We say "if such it may be called," because in any event the obligation to pay the price was merely concurrent with that of the defendant to deliver the stock, much of which was not in the possession of the defendant, who required some time—which possibly might have been extended even beyond thirty days—to place himself in position to make delivery. But the modification of the terms having thus been agreed to by the seller, this departure from the terms of the agent's authorization affords no ground for refusal to pay him his commission. (4 R. C. L., sec. 52, p. 313.)

[4] It is further contended by the defendant that the transaction never progressed beyond the stage of negotiation, and calls attention to the fact that the contract which was prepared by the attorney for Wilkes and Osborn, and which Osborn was proposing to submit on November 5th to defendant for his signature, was, in legal effect, a mere option, not binding Wilkes to complete the purchase. But the contract was drawn in this form without the knowledge of Wilkes, and with the reluctant consent of Osborn, upon the advice of the attorney and the latter's statement that if it was unsatisfactory to the defendant it could and would be readily changed into a contract of purchase. Without having seen the proposed contract the defendant refused to proceed with the transaction. While we have no doubt that the contract as drafted by Wilkes' attorney did not embody the precise terms theretofore orally agreed to, and lends color to the contention of the defendant that the transaction was merely in a state of negotiation, it was in no sense conclusive evidence of the latter fact, and the jury was justified in concluding, as it doubtless did, that the drafting of the agreement in this form was merely an act of bad judgment on the part of the agent and attorney, and without legal effect in view of the subsequent turn of events.

[5] In conclusion, it is to be noted that the defendant made no objection to Wilkes as a purchaser, to the terms of the proposed contract, or to the manner or the time within which plaintiff and Wilkes performed their respective parts. He based his refusal to proceed exclusively, both on that day and the day following when interviewed by Osborn and the plaintiff, upon the ground that he was not able to perform. And it is apparent from the record that he had on the fifth day of November voluntarily disabled himself from performing while in the midst of a transaction with Wilkes which was obviously approaching a speedy and satisfactory culmination. The plaintiff did all that was required of him by the terms of his employment to entitle him to his commission, namely, he produced a *bona fide* purchaser, ready, able, and willing to take and pay for the stock on terms satisfactory to the defendant, his employer.

Judgment affirmed.

Lawlor, J., Lennon, J., Waste, J., Wilbur, C. J., and Seawell, J., concurred.

Rehearing denied.