[Civ. No. 5303.   First Appellate District, Division One.—March 19, 1926.]

## FRANK MELINE COMPANY (a Corporation), Appellant, v. MRS. L. KLEINBERGER, Respondent.

[1] BROKER'S COMMISSIONS—WHEN COMMISSION EARNED—PRODUCTION OF PURCHASER—BINDING CONTRACT.—In the absence of any specific agreement to the contrary, a broker employed to sell real estate has earned his commission when, within the life of his contract or any extension thereof, he has produced a person who is ready, able, and willing to purchase the property on terms satisfactory to the seller, and has obtained a binding and valid contract for a sale on terms proposed by the seller, or has brought the seller and buyer together and thus enabled them to enter into a contract of sale, or has produced such a purchaser who had verbally accepted the seller's terms and offered to enter into a written contract embodying the said terms and binding upon both parties;· but unless the intending purchaser has entered into such binding contract or has offered to the vendor, and not merely to the broker, to make such an agreement, the broker has not earned his commission.

[2] ID.—ABSENCE OF BINDING CONTRACT—READY AND WILLING PURCHASER—OFFER TO BROKER.—In an action to recover a real estate broker's commission, where the broker concedes that no written agreement of sale was entered into by the intending purchaser for the purchase of the property, and it is neither alleged in the complaint nor proved at the trial that he was a ready and willing purchaser, and on the only occasion that the parties were brought together, the intending purchaser declined to buy the property on the vendor's terms, the fact that later the intending purchaser instructed the broker to buy the property providing the latter considered it a good buy, and that accordingly the broker went to the vendor's house intending to "close the deal" and to pay a deposit—which was not authorized by the agency contract—was not sufficient to meet the requirements of the law, the final offer of the intending purchaser being made merely to the broker and not to the seller.

[3] ID.—EXCLUSIVE AGENCY—SALE THROUGH OTHER AGENT.—Where by a written contract an owner appoints a real estate company "sole agent for the exclusive sale" of real property, and said contract provides that in case the property is sold by said owner

---

1.  See 4 Cal. Jur. 583; 4 R. C. L. 307.
2.  See 4 Cal. Jur. 592.
3.  See 4 Cal. Jur. 608.

"or any agent, or any agent of said company sends or introduces to me a customer who buys it," the owner agrees to pay said company a specified commission, and the property is sold by the owner through another agent during the life of said contract, said company is entitled to the stipulated commission on the sale.

[4] Id.—Life of Contract — Modification — Intent—Sale.—Where said agency contract provides that it "shall extend for a period of 30 days . . . and until such further time" as the owner shall notify the real estate company "in writing of the termination of this agency," said contract fixes no time limit to the duration of the agency; but where, when said thirty-day period is about to expire, the parties add a clause thereto whereby they extend "the exclusive sale until" a specified date, and the conduct and declarations of the parties show . that it is their intention and understanding that such clause shall definitely limit the life of the agency to said specified date, it is essential for the real estate company, in order to recover a commission based upon the sale of the property by another agent, to prove that the property was "sold" by said other agent on or prior to said specified date.

[5] Id.—When Property "Sold."—Under such a contract, the property is deemed to be "sold," so far as the matter of the agent's commissions are concerned, when the vendor accepts the agent's purchaser, regardless of whether a written contract of sale is afterward actually entered into with him or whether the sale is ever consummated.

[6] Id. — Proof of Sale — Declarations of Owner — Prima Facie Case—Nonsuit.—In this action to recover a commission based upon the sale of real property by another agent during the life of plaintiff's exclusive contract, it having been proved by three witnesses, whose testimony was not conflicting or in any manner contradicted, that about 6:30 o'clock on the evening of the last day of plaintiff's exclusive contract defendant declared to plaintiff's representative that at five minutes past 6 on that same evening defendant sold the property to a designated purchaser through another real estate broker, and at that time she accepted said purchaser's check, and that defendant further stated "they were here before 6, but I made them wait until" 6:05, said evidence was sufficient to establish *prima facie* that said other real estate broker, as defendant's agent, "sold" the property on the day in question, and defendant's motion for a nonsuit was improperly granted.

[7] Id. — Nonsuit — Appeal — Weight of Oral Declarations of Owner.—On appeal from the judgment of nonsuit in such action, the question of the amount of weight that should be attached to the evidence of the oral declarations of defendant is imma-

7. See 9 **Cal. Jur.** 558.

terial, as a motion for nonsuit presents for determination a question of law, and if there is any substantial evidence which, with the aid of legitimate inferences favorable to plaintiff, tends to establish the averments of the complaint, the motion for nonsuit should be denied.

(1) 9 C. J., p. 591, n. 17, 19, 20, p. 595, n. 29, p. 609, n. 97, p. 611, n. 6.   (2) 9 C. J., p. 608, n. 94.   (3) 9 C. J., p. 617, n. 32.   (4) 9 C. J., p. 519, n. 2, p. 606, n. 83, p. 607, n. 84.   (5) 9 C. J., p. 609, n. 96, p. 614, n. 20.   (6) 9 C. J., p. 622, n. 56; 38 Cyc., p. 1557, n. 21. (7) 38 Cyc., p. 1551, n. 62, p. 1553, n. 90, p. 1558, n. 25, 26, p. 1559, n. 35.

APPEAL from a judgment of the Superior Court of Los Angeles County. William C. Doran, Judge. Reversed.

The facts are stated in the opinion of the court.

L. M. Chapman and Ward Chapman for Appellant.

Milton K. Young, Lyndol L. Young, William K. Young, Forrest F. Murray and Young & Young for Respondent.

KNIGHT, J.—This is an appeal by plaintiff from a judgment of dismissal entered after a nonsuit had been granted, in an action brought to recover real estate commissions.

The material provisions of the contract out of which the controversy grew are as follows:

"Los Angeles, California, Feb. 24, 1922.

"I hereby appoint Frank Meline Company sole agent for the exclusive sale of the here (i)n described property, upon the terms stated; and in case the said property is sold by me or any agent, or any agent of said company sends or introduces to me a customer who buys it, I agree to pay said company five (5) per cent of such a price as I may accept. In consideration of Frank Meline Company using their efforts to sell said property, this agency shall extend for a period of 30 days from date hereof and until such further time as I shall notify said Frank Meline Company in writing of the termination of this agency. . . .

"(Signed)   MRS. L. KLEINBERGER."

Later a supplementary clause was added, reading: "We hereby extend the exclusive sale until April 5, 1922 (Inc.). Mrs. Kleinberger." The sale price was fixed at $45,000,

one-half of which was to be a cash payment, but the terms for the payment of the balance were not specified.

Appellant's cause of action as set forth in the complaint was based upon the theory that within the period of the exclusive agency respondent sold the property through another agent and that therefore, under the terms of the contract, appellant was entitled to a commission on that sale. The complaint alleges in this regard that "up until the 5th day of April, 1922, plaintiff was diligently engaged in the effort to sell the property, and did have responsible prospective buyers negotiating for the purchase of the same when the defendant herself made a sale of said property through an agent, by name James J. Donahue, for a price plaintiff . . . alleges to be $55,000.00, and defendant thereupon attempted to repudiate said agency contract and claimed that the same had terminated." Defendant, answering, denied any attempted repudiation of the contract, alleged that the same expired on April 5, 1922, and that on the day following, April 6, 1922, the property was sold, together with certain furniture, through the said Donahue, as agent, for the sum of $55,000. At the trial, as here, the parties presented the additional issue of whether or not within the life of the agency appellant performed the contract by procuring a purchaser who was ready, able, and willing to buy the property on respondent's terms.

The substance of the evidence offered in support of appellant's case was that after obtaining the agency contract, appellant advertised the property for sale and endeavored to interest several buyers. When the thirty-day period mentioned in the contract was about to expire, appellant sought a twenty-day extension, which respondent refused to give, but consented to an extension to and including April 5, 1922. Prior to that date appellant had procured a prospective buyer named Oesterreich, with whom Frank Meline, the principal owner of the appellant corporation, had been associated in other business transactions. On the afternoon of April 5th one of appellant's salesmen drove Oesterreich and his wife to the premises to be sold, where they met and talked with respondent. Oesterreich offered respondent $43,000 for the property, which offer respondent refused to accept; thereupon Oesterreich, his wife and the salesman retired to their automobile, which was standing at

the rear of the premises, and after discussing the matter between themselves, the salesman, *acting under instructions from Oesterreich*, re-entered the house, and on behalf of Oesterreich, but out of his presence, offered respondent $45,000 for the property, $25,000 thereof to be paid in cash and the balance to be secured by a mortgage bearing interest at six and one-half per cent per annum. Respondent declined the offer, demanding seven per cent interest. The Oesterreich party then left, saying they would notify respondent by 6 o'clock that evening whether or not they would meet respondent's terms. They drove to appellant's office, where Oesterreich discussed the matter at some length with Frank Meline. Finally Oesterreich told Meline that if Meline believed the purchase would be an advantageous one, out of which he, Oesterreich, would be able to make money, to close the sale on the best terms obtainable. Oesterreich thereupon departed, taking with him a check for $2,000 which he had previously deposited with Meline for the purpose of making a deposit on the prospective purchase. Meline, accompanied by two salesmen, then proceeded to respondent's premises for the purpose, as Meline claims, of closing the sale. As they entered respondent's house they were met by respondent, who informed them that they were too late; that she had waited for an answer from them until 6 o'clock, and having received none, sold the property, including the furniture, through an agent named Donahue to a Mr. Hart, and had accepted Hart's check. One of the salesmen asked respondent if she had not been a "little hasty," stating that the exclusive contract held by his company did not expire until midnight of that night, to which respondent replied that it was useless to discuss the matter further because the property had been sold. Respondent then asked Meline if he desired to inspect the property, to which the latter replied that since the property had been sold, an inspection would avail nothing, and he departed. Meline testified that his object in going there that night was to verify his belief that the prospective purchase was a good one, whereupon he intended to pay a deposit. After respondent refused to continue the negotiations with him, however, no tender of deposit was made. The trial court held that appellant failed to establish a *prima facie* case either upon the theory that appellant had

procured a purchaser within the life of the agency, or that the property had been sold within that time by any other agent.

[1] In regard to the first proposition, it seems to be well settled that in the absence of any specific agreement to the contrary, a broker employed to sell real estate has earned his commission when, within the life of his contract or any extension thereof, he has produced a person who is ready, able, and willing to purchase the property on terms satisfactory to the seller, and has obtained a binding and valid contract for a sale on terms proposed by the seller, or has brought the seller and buyer together and thus enabled them to enter into a contract of sale, or has produced such a purchaser who has verbally accepted the seller's terms and offered to enter into a written contract embodying the said terms and binding upon both parties (*Twogood* v. *Monnette,* 191 Cal. 103 [215 Pac. 542]) ; but unless the intending purchaser has entered into such binding contract or has offered to the vendor and not merely to the broker, to make such an agreement, the broker has not earned his commissions. (*Hicks* v. *Christeson,* 174 Cal. 712 [164 Pac. 395].)

[2] Appellant concedes that no written agreement was ever entered into by Oesterreich for the purchase of the property, and it was neither alleged in the complaint nor proved at the trial that he was a ready and willing purchaser within the meaning of the rule just stated, the evidence in this respect showing without conflict that on the afternoon of April 5th, the only occasion on which the parties were brought together, Oesterreich declined to buy the property on respondent's terms. The fact that later Oesterreich instructed Meline to buy the property providing the latter considered it a good buy, and that accordingly Meline went to respondent's house intending to "close the deal" and to pay a deposit—which was not authorized by the agency contract—was not sufficient to meet the requirements of the law, the final offer of Oesterreich, if it may be called such, being made merely to the broker and not to the vendor. (*Hicks* v. *Christeson, supra.*) We conclude, therefore, that as to the first point mentioned, the ruling of the trial court must be sustained.

[3] In reference to the other branch of the case, the question presented is whether, as the complaint alleges, the property was "sold" by respondent through another agent during the life of appellant's contract; if it was, appellant, under the terms of the contract, was entitled to the stipulated commission on the sale. (*Kimmill* v. *Skelly,* 130 Cal. 555 [62 Pac. 1067].) The evidence shows beyond much doubt, we think, that the agency expired on April 5th. [4] As originally written and signed, the contract fixed no time limit to the duration of the agency. It provided that it should continue "for a period of thirty days from date and until such further time as I shall notify said Frank Meline Company in writing of the termination of this agency." If the contract had been allowed to stand in that form, it would have been immaterial, as appellant contends, so far as the payment of appellant's commissions were concerned, whether respondent sold said property on the 5th or the 6th of April, because at no time did respondent attempt by written notice to terminate the agency. (*Kimmill* v. *Skelly, supra; Knox* v. *Modern Garage etc. Shop,* 68 Cal. App. 583 [229 Pac. 880].) But when the thirty-day period mentioned in the contract was about to expire, the parties added a clause thereto, the plain effect of which was to definitely limit the life of the agency to April 5th; and the declarations and conduct of the parties clearly indicate that such was their intention and understanding. (*Elsea* v. *Fassler,* 29 Cal. App. 187 [154 Pac. 1067].) It is apparent, therefore, that in order to collect a commission on the sale made through Donahue it was essential for appellant to prove that the property was "sold" by Donahue on or prior to April 5th.

[5] Respondent contends that a sale was not established because the evidence failed to show that on or before April 5th there was a conveyance of title or that any written agreement of sale was entered into between respondent and Hart, and that therefore, in view of the statute of frauds (Code Civ. Proc., secs. 1971 and 1973) the oral declarations of respondent to the effect that the property had been sold were insufficient in law to prove that fact. As to the meaning of the word "sold" as it is employed in said contract, it should be kept in mind that this controversy does not involve the relationship of vendor and vendee, and there-

fore the questions of whether or not the transaction which took place on April 5th between respondent and Hart constituted a valid sale or was legally sufficient to support an action between them for specific performance are not important. The contract here is the usual one between an intending seller and the broker, involving merely the payment of compensation for personal services to be rendered in connection with a sale and the language of the contract must be construed in the light of that relationship. (*Purcell* v. *Firth*, 175 Cal. 746 [167 Pac. 379].) Under a contract of that nature the property is deemed to be "sold" so far as the matter of the agent's commissions are concerned when the seller accepts the agent's purchaser regardless of whether a written contract of sale is afterwards actually entered into with him or whether the sale is ever consummated. (*Purcell* v. *Firth, supra; Twogood* v. *Monnette, supra,* citing cases; *Hicks* v. *Christeson, supra.*) The case of *Houston* v. *Williams,* 53 Cal. App. 267 [200 Pac. 55], is not unlike the present one upon this point. There the issue was as to whether under the agency contract the owner reserved the right to make a sale himself, and if so, how far it was necessary for him to proceed in his negotiations with a prospective buyer before the transaction constituted a sale which would deprive the agent of his commissions. The court said that "there can scarcely be any doubt that if the power to sell without liability was reserved by the owner, it included the right to secure a purchaser ready to buy and thereby avoid the payment of any commission," even though the sale was not fully consummated by the owner until after the agent had procured a purchaser.

[6] The evidence in the case at bar is to the effect that about 6:30 o'clock on the evening of April 5th respondent declared to appellant's representative that at 5 minutes past 6 on that same evening she sold the property to Hart through Donahue, who was admittedly a real estate broker, and at that time she accepted Hart's check. She further stated "they were here before 6 but I made them wait until 6:05." These declarations were proved by three witnesses, whose testimony on this point was not conflicting nor was it in any manner contradicted. The only fair inference to be drawn from this evidence is that on the evening in question respondent accepted the purchaser pro-

cured by Donahue, agreed with him upon terms, and accepted his check as payment on the purchase price. It was furthermore established by respondent's answer that on the next day the sale was consummated with Hart for a selling price of $55,000, including the furniture, which was ample proof that on April 5th Hart was ready, able and willing to buy the property. In our opinion the evidence narrated was sufficient under the authorities cited to establish *prima facie* that Donahue, as agent, "sold" the property on April 5th within the meaning of the agency contract. That being so, we believe the motion for a nonsuit was improperly granted.

[7] The question of the amount of weight that should be attached to the evidence of the oral declarations of respondent is immaterial. A motion for nonsuit presents for determination a question of law, and if there is any substantial evidence which, with the aid of legitimate inferences favorable to plaintiff, tends to establish the averments of the complaint, the motion for nonsuit should be denied.

The judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.