[Civ. No. 5639. Second Appellate District, Division Two.—February 5, 1930.]

RAYMOND J. BARNES, Respondent, v. WENDELL J. OSGOOD et al., Appellants.

John C. Miles for Appellants.

Sheran, Alvord & Hearn and Thomas H. Hearn for Respondent.

BURNELL, J., *pro tem.*—The appellants, who owned an equity in two lots in the city of Los Angeles, entered into a written listing agreement with the respondent whereby they granted to him "the exclusive and irrevocable right to sell the same" within the period of forty-five days after February 14, 1925, "for $7,000, and to accept a deposit thereon, cash 1027, balance *as per contract*—three payments 1991 each, interest and taxes to date of assignment to be paid by seller." (Italics ours.) The agreement further provided: "I hereby agree to pay said agent as commission price received above 7000 of the selling price." Within the time limit of this agreement the respondent interested one Cornitius in the property and secured from him a deposit of $100 and a written agreement to purchase the property "for the purchase price of eighty-two hundred dollars, payable as follows: $2287 cash (of which $100 is above acknowledged) and the balance *as per contracts of purchase. issued between the Security Trust & Savings Bank and E. May Eaton and Wendell Osgood;* together with interest at the rate of 7% per annum, payable quarterly." (Italics ours.) The court found and the appellants do not dispute the fact that Cornitius was ready, willing and able to purchase the land for the price and on the terms above outlined; nor do the latter contend that those terms differ from those specified in the listing agreement. Thereafter respondent, after several abortive efforts, finally succeeded in reaching appellant Osgood on the telephone and told him that he had a purchaser for the property and a deposit on the purchase price. Osgood stated that neither himself nor

Miss Eaton wanted to sell the land, to which respondent replied: "I have it sold, you gave me an exclusive option on the property, and I have a purchaser and a check from him, he wants the property, ready to buy it and is able to buy it." Osgood's answer was, "Well, you are not going to get it." In a second conversation over the telephone Osgood said to respondent: "You haven't made a tender on it yet," to which respondent answered that he would "come right down and make it." Osgood said he would be in his office "for the afternoon," but when respondent called there he was not in, and after waiting for him half an hour, calling at his home and attempting to locate him by use of the telephone, all without success, respondent went to the home of Miss Eaton, who also stated that she and Osgood did not want to sell. A couple of days later respondent again called on Miss Eaton, accompanied by Cornitius, whom he introduced to her as the purchaser of the property, stating that they were there to close the deal. In reply to the question "What was done about offering her the money?" respondent testified: "I took my pocketbook out and said, 'Miss Eaton, Mr. Cornitius is ready to buy the lot; I am here to pay you what you have got coming on the lot.'" Miss Eaton was, to quote respondent's testimony, "very antagonistic; she said, 'No, you are not going to steal that lot from me, you are not going to get it.'" She also said that Mr. Osgood "looked after all her business and that all transactions must be made through him." After vainly attempting to again communicate with the elusive Osgood respondent brought this action for his commission and recovered the judgment from which this appeal is taken.

Appellants' first point is that "the plaintiff did not produce to the defendants, and particularly to the defendant Osgood, a purchaser ready, willing and able to purchase the property." It is not contended that Cornitius was not ready, able and willing to purchase the property for the price and upon the terms specified by appellants in their listing agreement with respondent, but merely that respondent did not "produce" him. The foregoing review of the evidence is sufficient, without further comment, to demonstrate the utter lack of merit in this contention as applied to Miss Eaton. As to Osgood, it is apparent that he was

deliberately avoiding respondent, and that for the latter to have brought the purchaser face to face with him would have been a vain act had respondent been able to perform it. His refusal to comply with his agreement to sell was definite and certain. ■ The law does not require the performance of a vain act, and a formal tender of performance is excused by the refusal in advance of the party as to whom such performance should be made to accept the same (Civ. Code, secs. 1440, 1511, 1512, 1515; *Pierce* v. *Lukens*, 144 Cal. 397 [77 Pac. 996]; *Scribner* v. *Schenkel*, 128 Cal. 250 [60 Pac. 860]; *Peardon* v. *Markley*, 50 Cal. App. 257 [195 Pac. 70]). ■ Furthermore, the obligation of Osgood and Miss Eaton was a joint obligation, and performance as to her was performance as to her co-obligor (secs. 1475 and 1488, Civ. Code; *Hoover* v. *Wolff*, 167 Cal. 337, 139 Pac. 794]).

■ But apart from the question as to physical production of the purchaser and even if he had not been brought face to face with either of the defendants, the evidence establishes the fact that respondent did all that could be required of him to entitle him to the commission for which he was awarded judgment. ■ There are three methods either one of which a licensed broker employed to sell real property may follow in order to entitle him to his commission. All of them require that he shall, within the life of his contract or any extension thereof, find a buyer who is ready, able and willing to purchase the principal's property for the price and on the terms demanded by the latter. Having done this he may either (1) obtain a valid and binding contract from the purchaser agreeing to buy for such price and on such terms, (2) bring the buyer and seller together and thus enable them to enter into a contract of sale, or (3) produce such purchaser who verbally accepts the seller's terms and offers *to the latter* to enter into a written contract embodying said terms and binding on both parties (*Twogood* v. *Monnette*, 191 Cal. 103 [215 Pac. 542]; *Meline Co.* v. *Klienberger*, 77 Cal. App. 193 [246 Pac. 136]; *Coulter* v. *Howard*, 203 Cal. 17 [262 Pac. 751]). The record before us shows, and the appellants do not otherwise contend, that respondent had secured from Cornitius a valid and binding agreement to purchase for the price and on the

terms specified by appellants in their listing agreement. Having thus pursued the first of the three methods above set forth he was required to do nothing more to entitle him to his commission.

Appellants' other contention is that respondent "was entitled to a commission only out of the money received from the sale of the property, and inasmuch as no sale was made and no money was received from said sale" he is entitled to no commission. The clause as to agent's commission in the agreement of employment does not bear out any such construction.

In the absence of any agreement to the contrary the broker has performed his contract and is entitled to his commission when he produces the purchaser by any of the three methods above outlined (*Phelps* v. *Prusch,* 83 Cal. 626 [23 Pac. 1111]), "regardless of whether a written contract is actually entered into (between buyer and seller) or whether the sale is ever consummated by the delivery of the property and the payment of the purchase price" (*Twogood* v. *Monnette, supra; Gunn* v. *Bank of California,* 99 Cal. 349 [33 Pac. 1105]; *Merwin* v. *Shaffner,* 31 Cal. App. 374 [160 Pac. 684]); and this was held to be the case even where the agreement was to pay the commission on the sale "when the same is consummated" (*Purcell* v. *Firth,* 175 Cal. 746 [167 Pac. 379, 380]).

The judgment is affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.