[Civ. No. 359. Fourth Appellate District.—April 3, 1931.]

F. BRADLEY COULTER, Respondent, v. JULIA C. HOWARD, Appellant.

N. B. Nelson and Richard L. North for Appellant.

Tanner, Odell & Taft for Respondent.

LAMBERSON, J., *pro tem.*—The respondent, a real estate broker, filed her complaint to recover a commission of five per cent upon the purchase price of a certain piece of property described as lots 7, 8, 9 and 10 in block 200 of Villa Farms tract, near the city of Santa Monica in Los Angeles County. The complaint alleged that plaintiff had procured a purchaser for the real property according to the terms of her employment and had duly performed all of the conditions of said contract on her part to be performed. The answer denied the employment, denied the

performance of the conditions of the contract on the part of the broker and denied the acceptance by the defendant of any agreement with any purchaser procured by the plaintiff. Upon a former trial of the case the defendant had judgment against the plaintiff and the case was appealed to the Supreme Court. The decision reversing the judgment of the lower court is found in the case of *Coulter* v. *Howard*, 203 Cal. 17 [262 Pac. 751]. A second trial was had and judgment was rendered in favor of the plaintiff, respondent herein, the trial court finding that all of the allegations of the complaint were true and that all of the allegations of the answer, with one exception which is immaterial, were untrue. From the judgment of the trial court awarding the plaintiff judgment in the sum of $3,000 with interest thereon at the rate of seven per cent per annum from July 5, 1923, the date of filing the action, this appeal has been taken. A very full statement of the facts, as elicited at the first trial of the case, is found in the opinion of Mr. Justice Preston in the case of *Coulter* v. *Howard, supra*, but for the reason that the appellant now seriously contends that the testimony adduced at the second trial of the case is materially different from the testimony presented at the first trial, and for the further reason that we desire to mention some additional matters for the purpose of this decision, we shall restate the facts as we find they were presented at the second trial. Those facts are substantially as follows: The defendant and appellant, who was a widow, owned a 20-acre piece of land divided into four lots already enumerated, upon which there was growing a lemon orchard. She was approached by a Miss Hugill, a licensed saleswoman for the plaintiff, with the object of obtaining a listing of the land for sale. The appellant was willing to sell, with certain reservations, which were discussed upon a number of occasions in conversations between appellant, her son Ray Howard, Miss Hugill and later with prospective purchaser B. O. Driver, who had been interested in the matter by plaintiff or her agent. Certain reservations were stated by the appellant, relating chiefly to the retention by her of a portion of the property upon which were located water wells which the appellant or her son desired to use in the irrigation of other property. The appellant made a verbal contract with respondent au-

thorizing the respondent to find a purchaser at a purchase price of $3,000 per acre or a total of $60,000, and the fact that Mr. Driver was a prospective purchaser under such arrangement was communicated to the appellant. About three weeks after the respondent first became interested in the property and on June 21, 1923, a son of the defendant, Ray Howard, assuming authority to act for his mother, executed, in favor of plaintiff, a three-day listing contract for the sale of the property. At the first trial of the case it was not admitted that Ray Howard had authority to act for his mother, but on the second trial it was stipulated by counsel, apparently in deference to the opinion of the court in the case of *Coulter* v. *Howard, supra,* that Ray Howard had authority to sign such contract. This contract read in part as follows:

"In consideration of the services of (a)—F. Bradley Coulter hereinafter called the agent, I hereby list with said agent, exclusively and irrevocably, for a period of 3 days from date hereof, the following described property, situate in the County of Los Angeles, State of California, to-wit:

"Lots 7, 8, 9, 10 Block 200 Villa Farms Tract owner to reserve N. E. Corner lot 50 feet Block 9 with well thereon. No other water to be pumped on lower 10 acres; Buyers to give bonds against lien on improvements; release clause will include 20% more than purchase price of lot; seller to reserve lemon crop to be picked within 45 days; $10000 cash; $5000 in 90 days; Balance 1, 2, 3 and 4 years at 7% interest. Total price $60000 and I hereby grant said agent the exclusive and irrevocable right to sell the same within said time for ——— ($   ) Dollars and to accept a deposit thereon. Total Price $60,000.

"I hereby agree to pay said agent as commission five (5%) per cent of the selling price."

In accordance with this listing and the conversations which had occurred before and on June 22, 1923, said B. O. Driver, who had been procured by respondent to make an offer for the purchase of said property, did make such an offer in writing. The offer was clearly made in the light of the conversations which the parties had theretofore had, and was in the form of escrow instructions, which were drafted at the First National Bank of Santa Monica by some officer or employee of the bank. Upon the apparent

agreement between the parties to enter into an escrow of the matter with the bank, Miss Hugill, on behalf of the respondent, telephoned to the appellant and asked her to go down to the bank where the escrow transaction was to be carried out and Mrs. Howard replied that she would prefer to go alone with her son, and after the escrow agreement, as drawn by the employee of the bank, was signed by Mr. Driver, Miss Hugill again called Mrs. Howard and asked her if she wanted her to come and take Mrs. Howard down to the bank and Mrs. Howard replied in the negative, saying that she would go with her son. The bank was to act as an escrow party for both the vendor and the vendee in the contemplated transaction. The instructions, as signed by Mr. Driver, were in part as follows:

"Buyer and Mortgagee Escrow Instructions

Order No. —— Escrow No. 2716.

"The First National Bank in Santa Monica, Cal. Santa Monica, Cal., June 22, 1923.

"I hand you herewith check for $500.00 and will within thirty days hand you check for $9500.00 and mortgage for $50,000.00 payable $5000.00 on or before 90 days from date, balance $11,250.00 on or before 1 yr., $11,250 on or before 2 yrs., $11,250 on or before 3 yrs., $11,250 on or before 4 yrs., with int. at 7% from date of report of title payable quarterly, all of which you are authorized to use in connection with your Escrow No. 2716 when you can issue, in usual form, continuation Guarantee of title of Title Guarantee & Trust Company, Title Insurance & ·Trust Company, or Los Angeles Title Insurance Company, (with liability thereunder not to exceed $60,000) on Lots 7–8–9–Blk 200 Villa Farms Tract which will show record title to said property vested in Bert O. Driver free from incumbrances *except* taxes for the fiscal year 1923 and 1924.

"A lot 40 ft. by the depth of adjoining lots, said lot situated on the N. E. corner of Lot 9 and upon which the well is situated is to be re-deeded to Julie C. Howard without consideration."

Later, on the same day, appellant appeared at the bank and the same employee prepared escrow instructions for Mrs. Howard, these instructions being written on a separate form or paper and specifying the terms of sale, which in

at least two respects differed materially from the listing signed by her son Ray Howard. The escrow instructions signed by Mrs. Howard, so far as they are material for the purposes of this case, were as follows:

"Seller and Mortgagor Escrow No. 2716 Order No. ——
"The First National Bank in Santa Monica, Cal.
"Escrow Instructions.
"Santa Monica, Cal., June 22, 1923.
"The First National Bank in Santa Monica, Cal.

"I will hand you Deed executed by Julie C. Howard, a widow to Bert O. Driver of Lots 7–8–9–10 Block 200 Villa Farms Tract Reserving all subterranean waters on lots 9 and 10 which you are authorized to deliver to buyer of h—— respresentatives, upon payment to you by July 1st, 1923 for account of parties executing the instrument the sum of $10000.—½ to be dep. 5—by 6/25/23 from which you may deduct your Escrow charges and charges for usual form guarantee limiting liability to $60,000 and from which you may also pay all incumbrances on said property.

"Procure mtg. for $50,000 payable $5000 on or before 90 days—Balance in 4 equal annual payments on or before —— with interest at 7% from date of report of clear title payable quarterly—Buyer to give bond to protect against Improvement liens. This sale is made subject to satisfactory conditions and arrangements being made with the City of Santa Monica in regards to domestic water and sewer service. . . .

"Seller reserves crop of lemons to be harvested within 45 days from date.

"Pay F. Bradley Coulter a commission of $——5%——at close of escrow but only out of funds then due and payable to me out of this escrow. . . .

"Time is declared to be of the essence of these instructions. If you are unable to comply with these instructions within the time specified, said instruments shall be returned to me on my written demand; but in the absence of such demand you will proceed to comply with these instructions as soon as possible thereafter."

Mr. Driver, upon the execution of the escrow instructions signed by him, paid to the escrow bank the sum of $500 in cash pursuant to his offer, and thereafter he and the repre-

sentatives of the appellant proceeded to make arrangements with the city of Santa Monica for city water and sewerage connections for the property, the ability of the purchaser to obtain a domestic water supply from the city for the use of future purchasers and residents upon the property being apparently an important part of the transaction. Arrangements were satisfactorily completed with the city authorities on June 25, 1923. Up to that time the parties who had signed the respective escrow agreements were in ignorance of the fact that separate papers had been signed by each person, and Mr. Driver was, according to the preponderance of the evidence, without knowledge that provisions had been incorporated in the escrow instructions signed by respondent, which differed from the listing agreement signed by Ray Howard, and from the agreement discussed prior to the signing of the written papers. The evidence is clear that from and after the completion of arrangements with the city of Santa Monica hereinbefore mentioned, the purchaser was ready, willing and able to complete the purchase of the property. Thereafter and on or about the twenty-seventh day of June, 1923, he learned for the first time from the escrow clerk at the bank, and by an inspection of the escrow instructions signed by Mrs. Howard, that said document required the payment of the sum of $5,000 on June 25, 1923, and he immediately gave a check to the escrow bank for the sum of $4,500, thus completing the first $5,000 payment. His check, which was introduced in evidence, bore the date of June 27, 1923, and was marked paid on June 28th. While the evidence is conflicting, the preponderance thereof is that the sum named in the check was paid into the escrow bank on June 28th, and before the appellant called at said bank and signed and delivered to it a writing intended to cancel the transaction, and which was as follows:

"The Merchants National Bank of Santa Monica 90–192
      Santa Monica, Cal. June 28—1923.

"The First National Bank in Santa Monica Calif.

   "Gentlemen: Regarding the escrow in your bank concerning Lot 7–8–9 & 10 Villa Farms Tract Santa Monica, Mr. Driver purchaser, we hereby notify you to cancel the escrow and Return Mr. Driver the $500.00 he has deposited, owing to his failure to comply with the conditions we speci-

fied regarding the depositing $4500.00 additional money by Monday June 25—

"Yours Truly,
"JULIE C. HOWARD."

The appellant had learned, on or about the 25th of June, 1923, that the purchaser had not made the additional payment required by her escrow instructions, and on the 26th or 27th of June she entered into negotiations with one Milton I. Baird for the sale of all of the property involved in the transaction, at a purchase price of $64,000, reserving to herself the right to obtain a deed for a retransfer to her of a portion of said lot 9, on which there was a well and pump, for a certain consideration. A verbal agreement to sell to Mr. Baird was made on June 27th, and terminated in a written agreement dated June 27th, but apparently executed on June 28th. On July 10, 1923, the money deposited by Mr. Driver was refunded to him and the sale to him was never completed.

Upon a second appeal of a cause the court will not only look to the opinion of the court on the previous appeal, but also to the record, for the purpose of determining whether or not the law of the case should control in the determination of the second appeal (*Estate of Baird*, 193 Cal. 225 [223 Pac. 974]; *McKinley* v. *Tuttle*, 42 Cal. 570) and on the second appeal, unless the evidence is substantially different in a material respect, the doctrine of the law of the case will apply. (*Estate of Baird, supra; Brett* v. *S. H. Frank & Co.*, 162 Cal. 735 [124 Pac. 437].) A comparison of the facts as disclosed by the record upon the present appeal with the facts adduced during the first trial of the case clearly demonstrates that there is no substantial difference between the case as it was considered upon the former appeal and the case that is now before the court. If the listing agreement signed by Ray Howard as agent for the appellant had been allowed to stand by itself there might be some grounds for the contention of appellant that the purchaser was not ready, able and willing, within the time specified in the listing agreement, to comply with the terms thereof, but the escrow instructions executed by the appellant as of June 22d constituted a counter-offer on the part of the appellant, the contents of which should have been immediately disclosed by her or her agent to the prospective

purchaser. The appellant herself aided in preventing such a disclosure by refusing to join the purchaser at the escrow bank for the purpose of preparing the proper instructions when requested to do so by the agent of the respondent, and her failure to appear at the bank with the purchaser and there join them in executing instructions or an agreement which would express the mutual understanding of the parties at that particular time, has served to add to the confusion of the entire transaction.

■ There being no substantial difference in a material respect in the testimony introduced at the two trials of the case, the following propositions must be accepted as the law of the case under the decision in the case of *Coulter* v. *Howard, supra.* First, that the escrow instructions executed by the appellant on June 22, 1923, in which the escrow agent was authorized to pay respondent a commission of five per cent at the close of the escrow, was a note or memorandum within the meaning of section 1624 of the Civil Code and section 1973 of the Code of Civil Procedure. Second, that the acts of the appellant in entering into an agreement for the sale of the property to another person, and her service of notice of cancellation of the transaction, operated as a repudiation of her contract with the purchaser named in the escrow agreement, and although it be conceded that under the escrow instructions signed by herself, the commission to be paid to the respondent by her was not to be paid until the close of the escrow, and then only out of the funds payable to her thereunder, the respondent was entitled to the payment of her commission as of the date of the repudiation. Third, that it is not necessary that there be a written contract between the seller and the purchaser of real estate in order to permit the recovery of a broker's commission if the broker has produced to the seller a purchaser who is ready, willing and able to purchase upon the terms proposed by the seller, within the time specified, and who has agreed to those terms and is willing and has offered to enter into a binding contract. In this connection the court, in the case of *Coulter* v. *Howard, supra,* at page 25, said:

"It is not necessary that a binding contract be executed by the purchaser. It is only necessary that he be ready, able, willing, and offer to purchase. The rule in this re-

spect has been often stated. 'It is also established law in this state that a written contract between the seller and the purchaser . is not essential to the recovery of the broker's commission if he has produced to the seller a purchaser who is ready, willing and able to purchase upon the terms proposed by the seller and who has agreed to those terms and is willing and offers to enter into a binding written contract. The broker has performed his duty and has earned his commission regardless of whether a written contract is actually entered into or whether the sale is ever consummated by the delivery of the property and the payment of the pur-. chase price.' (*Twogood* v. *Monnette*, 191 Cal. 103, 107 [215 Pac. 542, 543].) See, also, to the same effect, *Umphray* v. *Hufschmidt* [73 Cal. App. 140, 238 Pac. 749], *supra; Frank Meline Co.* v. *Kleinberger*, 77 Cal. App. 193 [246 Pac. 136], *Ford* v. *Cotton*, 82 Cal. App. 675 [256 Pac. 301], and numerous other cases.)

"It has also been well said: 'Whether the sale was prevented by the failure of perfect title or by the mere will of the vendor makes no difference. In either case the compensation had been earned by the agent. (*Smith* v. *Schiele*, 93 Cal. 144 [28 Pac. 857]; *Phelan* v. *Gardner*, 43 Cal. 306–311; *Justy* v. *Erro*, 16 Cal. App. 519–522 [117 Pac. 575]; *Neilson* v. *Lee*, 60 Cal. 555; *Stanton* v. *Carnahan*, 15 Cal. App. 527–529 [115 Pac. 339].)' (*Purcell* v. *Firth*, 175 Cal. 746, 750 [167 Pac. 379, 381].)

" 'Second, the law as to this contract is no different from the law as to brokers' contracts generally; that is to say, where the contract fixes the broker's right to remuneration upon his sale, if he shall produce a purchaser able and willing to buy, he has performed his part of the contract, and the owner's liability for his compensation or commission is complete, and cannot be avoided by any arbitrary or wanton refusal to consummate the sale.' (*Merriman* v. *Wickersham*, 141 Cal. 567, 570 [75 Pac. 180, 181].)"

The fourth proposition must be accepted that the respondent did produce, within the time prescribed, a purchaser ready, able and willing to carry out the transaction upon the terms imposed by her.

It is contended by appellant that the purchaser never fully agreed to the reservations made by the appellant in regard to subterranean waters, or in regard to the lemon

crop mentioned in her escrow instructions. As to the question of subterranean waters, the first conversations and the listing agreement signed by Ray Howard related to the withholding or the retransfer of a definite parcel of land upon which water wells were then located, while the escrow instructions of Mrs. Howard injected into the transaction a materially different matter, because in those instructions she sought to reserve "all subterranean waters on lots 9 and 10". There is a vast difference between this reservation, which would create a servitude upon the remainder of the property, and to which all purchasers thereof would thereafter be subject, and the reserving of a small parcel of the land which she would have owned in fee and the ownership of which would have been of no concern to future purchasers of other portions of the tract involved in the transaction. As the court said in substance in the case of *Coulter* v. *Howard, supra:* A fair construction of the evidence shows that statements of the purchaser made during the negotiations referred to the unwillingness of the purchaser to buy unless and until the city of Santa Monica should agree to furnish water and sewerage to the property, and when an agreement was reached with the city on the question, no other conditions respecting water were insisted upon by the purchaser, and after June 25th, when the city acted with respect to the water, there was from that time on no objection on the part of the purchaser respecting the water situation.

The preponderance of the testimony is, as to the reservation of the crop of lemons then growing upon the property, and as to the provision that the buyer should give a bond to protect against improvement liens, that the purchaser accepted and was at all times ready and willing to comply with the requirements contained in the escrow instructions which, as we have said before, constituted a counter-offer on the part of the appellant. The ability of the purchaser to pay for the property is not questioned and it is our opinion that the testimony introduced at the second trial does not substantially differ in any material respect as to the offer of the purchaser to buy the property upon the terms which had been discussed by the parties and as modified by the escrow instructions of the appellant. In the case of *Coulter* v. *Howard, supra,* at page 25, the court said:

"Defendant, therefore, having refused on her part to carry out the transaction and having deliberately repudiated the same by making a contract to sell the property to another, there is in reality no equity whatsoever in her position and it may well be doubted whether she had a right on June 28 to cancel the escrow after having herself first repudiated it by contracting on June 27th to sell the property to another. Plaintiff, therefore, on this record, clearly earned her commission.''

The appellant contends that an error was committed by the trial court in allowing interest from the date of filing the complaint. Respondent was entitled to recover interest under the provisions of section 3287 of the Civil Code. (*Martin* v. *Ede,* 103 Cal. 157 [37 Pac. 199].)

For the reasons hereinbefore stated the judgment is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 30, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1931.