[No. 13621.   Department One. — February 2, 1892.]

C. C. SMITH, JR., ADMINISTRATOR, ETC., RESPONDENT, *v.*
CHARLES M. SCHIELE, APPELLANT.

REAL ESTATE BROKERS — COMMISSIONS — CONSTRUCTION OF CONTRACT — SOLE
RIGHT TO SELL — CONSUMMATION OF SALE. — A written contract be-
tween the owner of land and real estate brokers, authorizing the brokers
"solely to sell" the land upon certain commissions, will be construed as
simply conferring upon the brokers the exclusive right to sell the prop-
erty, and not as limiting the contract of employment solely to the
consummation of a sale, so as to make the payment of the brokers' com-
missions contingent upon such consummation.

ID. — PRODUCTION OF BONA FIDE PURCHASER — FAILURE OF SALE — DE-
FECTIVE TITLE — RECOVERY OF COMMISSIONS. — Under a contract be-
tween the owner of land and real estate brokers, conferring upon them
the sole right to sell the land, and agreeing to pay them a commission of
two per cent on the full amount for which the property is sold, the
brokers are entitled to such commission upon their production of a *bona
fide* purchaser of the property on the vendor's terms, even though the
sale is not consummated, unless the failure to consummate it, the title
proving good, is chargeable to the purchaser; and if the failure is caused
by a defective title, the vendor alone is at fault, and the brokers are
entitled to recover.

ID. — CONTRACT FOR RETURN OF DEPOSIT — FAILURE OF OWNER TO REMOVE
DEFECTS — DISCHARGE OF PURCHASER. — Where the real estate brokers
entered into a contract with an intending purchaser of the land, ac-
knowledging the receipt of a deposit from such purchaser, and stipulating
that the title was to prove good, or no sale, in which latter case the de-
posit was to be returned, and such contract was ratified by the owner of
the land, the failure of such owner, within the time limited by the terms
of the contract, to remove a defect in the title caused by an unpaid
mortgage upon the land, and a pending suit for an interest in the prop-
erty, discharges the purchaser from his obligation to purchase, and enti-
tles him to the return of his money.

ID. — TENDER OF ENCUMBERED TITLE — COVENANT OF WARRANTY — PER-
SONAL OBLIGATION. — The fact that the owner of the encumbered land
tendered the purchaser a grant deed, containing a covenant of warranty,
and demanded payment of the balance of the purchase-money, did not
release the owner of the land of his obligation to convey a good title,
there being no offer to cure the defect in the title and to remove the en-
cumbrances.   The covenant of warranty is a mere personal obligation,
which the purchaser is not bound to accept.

ID. — SALE CONDITIONED UPON GOOD TITLE — AUTHORITY OF BROKERS —
RATIFICATION. — The action of the owner of the land in agreeing to and
ratifying the contract of his brokers with the intending purchaser, and
in accepting him as the purchaser of the property upon the terms of
such contract, is a waiver of an objection that the brokers exceeded
their authority in providing in the contract of purchase that the title
should prove good, or that there would be no sale.

Id. — Oral Ratification. — It was not necessary that such ratification should be in writing as between the owner of the land and the brokers, as it related to no interest in the land, in so far as it affected the brokers, but only to the owner's obligation to pay them their commissions when earned.

Appeal from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial.

The facts are stated in the opinion.

*W. C. Kennedy*, for Appellant.

Agents can make such contracts as they choose, and are bound by their contracts as made. (*Stewart* v. *Fowler*, 37 Kan. 677; *Power* v. *Kane*, 5 Wis. 265; 26 Am. Law Reg. 566; *Hinds* v. *Henry*, 36 N. J. L. 328.) The contract of employment was limited and special "solely to sell," contingent upon consummation of sale, and the commissions were not to be awarded, therefore, without consummation of sale. (Monograph in 26 Am. Law Reg. 551; *McPhail* v. *Buell*, 87 Cal. 115; *Sibbald* v. *Bethlehem etc. Co.*, 83 N. Y. 383; 22 Am. Rep. 441; *Kimberly* v. *Henderson*, 29 Md. 512; *Fiske* v. *Soule*, 87 Cal. 321; *McGavock* v. *Woodlief*, 20 How. 221.) If the condition of the contract be that a purchaser must be produced who consummates the sale, then a sale is a necessary condition to recovery. (*Richards* v. *Jackson*, 31 Md. 250; 1 Am. Rep. 49; *Attrill* v. *Patterson*, 58 Md. 226; *Blake* v. *Stump*, 73 Md. 160; *Hyams* v. *Miller*, 71 Ga. 608; *Stephens* v. *Scott*, 43 Kan. 285; *Sibbald* v. *Bethlehem etc. Co.*, 83 N. Y. 378; 22 Am. Rep. 441; *Flower* v. *Davidson*, 44 Minn. 46; *Moses* v. *Bierling*, 31 N. Y. 462.) The title was good and proved good, and therefore plaintiff cannot recover, as the purchaser would not buy. (*Lick* v. *Ray*, 43 Cal. 88; *Waterman* v. *Bolting-house*, 82 Cal. 659.) It is not difficult to find a pretended purchaser who does not and cannot make the purchase, if by so doing a broker can earn his commission. (*Power* v. *Kane*, 5 Wis. 265; *Neilson* v. *Lee*, 60 Cal. 560.) The refusal to take the property by the purchaser is a complete bar to plaintiff's recovery. (*McPhail* v. *Buell*, 87 Cal. 115; *Fiske* v. *Soule*, 87 Cal. 321; *Thomas* v. *Lincoln*, 71

Ind. 41; *Hoyt* v. *Shipherd*, 70 Ill. 309; *Harwood* v. *Trip-lett*, 34 Mo. App. 273; *McGavock* v. *Woodlief*, 20 How. 221.)

*A. S. Kittredge*, for Respondent.

The brokers had written authority, and such authority means the finding of a purchaser ready, willing, and able to buy on the owner's terms. (*Duffy* v. *Hobson*, 40 Cal. 244; 6 Am. Rep. 617; *Rutenberg* v. *Main*, 47 Cal. 219; *Dolan* v. *Scanlan*, 57 Cal. 266; *Phelps* v. *Prusch*, 83 Cal. 628.) They found such a purchaser in Cadwallader, and the agent, having found a purchaser of that kind, is entitled to his commissions (*Middleton* v. *Findla*, 25 Cal. 81; *Blood* v. *Shannon*, 29 Cal. 395; *Phelan* v. *Gardner*, 43 Cal. 311; *Neilson* v. *Lee*, 60 Cal. 555; *Phelps* v. *Prusch*, 83 Cal. 628), though the purchaser finally declines to take the property, because the title proves not good. (*Middleton* v. *Findla*, 25 Cal. 81; *Gonzales* v. *Broad*, 57 Cal. 226; *Phelps* v. *Prusch*, 83 Cal. 628. See note to *Stensgaard* v. *Smith*, 30 Am. Law Reg., N. S., 114–152; also see 26 Am. Law Reg., N. S., 545–568.) While a good title is always implied by law in an offer to sell land (Civ. Code, sec. 3394; *Moore* v. *Williams*, 115 N. Y. 592; 12 Am. St. Rep. 844; *Irving* v. *Campbell*, 121 N. Y. 353), yet, conceding the appellant's contention that the brokers had no authority to warrant the "title to prove good," still, the owner ratified such terms, and this ratification was not required to be in writing as between the owner and the brokers, as it did not relate to any interest in the land as between them. (See Civ. Code, sec. 1624.) The fact that the owner of the land held only an option to purchase the land made no difference. (*Campbell* v. *Thomas*, 87 Cal. 428; *McPhail* v. *Buell*, 87 Cal. 115; *Sibbald* v. *Bethlehem etc. Co.*, 83 N. Y. 383; 22 Am. Rep. 441.)

Fitzgerald, C. — Action to recover brokers' commissions for negotiating a sale of defendant's land.

Phelps & Smith were the brokers, and plaintiff, who succeeded to their claim, had judgment. Defendant appeals from the judgment and the order denying his motion for a new trial.

The questions presented by this appeal for decision arise out of the following state of facts: On February 14, 1887, defendant executed to Phelps & Smith the following contract of employment: —

"SAN JOSÉ, February 14, 1887.

"I, the undersigned, do hereby authorize Phelps & Smith solely to sell the following real estate as herein described: 244 acres of land bounded north by Mabery road, east by Pyle road, south by land of Johnson and Hannay and Julian Street road, west by the Coyote Creek, for the sum of $200 per acre, or as much less as I may take at any time of sale thereof; also agree to pay Phelps & Smith two per cent commissions, commission on the full amount said property is sold for. This contract shall be in force for two months, and after that date until the said property is sold, unless withdrawn by me in writing.                         CHAS. M. SCHIELE."

Phelps & Smith, who knew nothing at the time about the condition of the title of said property, accepted the employment to sell on the terms stated in the contract, and on March 10, 1887, found a purchaser for said property in one Cadwallader on the terms expressed in the following receipt: —

"Received, San José, March 10, 1887, from N. Cadwallader, the sum of five thousand ($5,000) dollars, in gold coin, being as a deposit and part payment on account of bargain and sale made to him this day to a certain lot, tract, or parcel of land lying, situate, and being in the county of Santa Clara, state of California [describing the property], containing about 244 acres of land, said Charles M. Schiele having been sold to said N. Cadwallader, this day, for the sum of two hundred dollars per acre, in gold coin, the balance to be paid sixty days from date, or this deposit to be forfeited without recourse. Title to prove good, or no sale, and this deposit to be returned.

"PHELPS & SMITH, for C. M. SCHIELE,<br>"Real Estate Agents."

They then introduced Cadwallader to defendant as the purchaser of said property, and, after informing him of the terms of the sale, delivered to him a copy of the foregoing receipt, which was agreed to and ratified by the defendant, and Cadwallader accepted by him as the purchaser thereof on said terms.

The deposit of five thousand dollars was not in gold coin, as stated in the receipt, but was, by agreement of all parties, a bank check for that amount drawn by Cadwallader in favor of said brokers, and deposited with the cashier of the bank, with directions in writing not to deliver it up without the consent of all parties.

An abstract of title was thereupon furnished by the defendant to Cadwallader for examination, and by him placed in the hands of a competent attorney for that purpose.

At this time defendant had only a contract of sale of said property from one Metzger, the owner, who executed to him a grant deed thereof on March 15, 1887, and at the same time defendant executed to Metzger a mortgage thereon to secure the payment of his note to Metzger for thirty thousand dollars, balance of purchase-money therefor.

On March 31, 1887, and before Cadwallader's attorney had completed his examination of the title of said property, one Bernhardt commenced an action against the defendant in the superior court of Santa Clara County, and on the same day filed *lis pendens* in the recorder's office of that county, claiming that he was a joint purchaser with defendant of said property, and was the owner of one undivided half thereof, and praying that defendant be declared a trustee for him of said undivided one half, and compelling defendant to make a deed to him for the same.

On July 15, 1887, the defendant had judgment against Bernhardt for costs, and on August 16, 1887, the judgment was satisfied.

The time fixed by the terms of the contract for the consummation of the sale was not extended, and on

May 9, 1887, the last day within which Cadwallader was to make payment of the balance of the purchase-money, the defendant tendered to him a grant deed in due form containing a covenant of warranty, and demanded the payment of said purchase-money. No satisfaction of the Metzger mortgage was ever tendered, nor was said mortgagee present to satisfy the same.

Cadwallader declined to accept the deed and pay the balance of the purchase-money, solely on the ground that the title of said property was not good, and that it had been so reported to him by his attorney.

Cadwallader was ready, willing, and able to pay the whole of said purchase-money, and consummate the sale, and would have done so had the title proved good.

The check was, by mutual consent of all parties, returned to Cadwallader, in August, 1887.

It is contended by appellant that the contract of employment was " solely to sell," and that the payment of the brokers' commissions was contingent upon the consummation of sale. Such is not our construction of the contract. The words "*solely* to sell," as therein used, were simply intended to confer upon the brokers the exclusive right to sell the property; that is, constituting them the *sole* agents for that purpose. Nor was the payment of commissions contingent upon the consummation of sale; for all that the brokers were required to do by the terms of their employment, to entitle them to their commissions, was to produce a *bona fide* purchaser for the property on the vendor's terms, and such is the well-settled meaning in this state of a broker's authority to sell. (*Duffy* v. *Hobson*, 40 Cal. 244; 6 Am. Rep. 617; *Rutenberg* v. *Main*, 47 Cal. 219; *Dolan* v. *Scanlan*, 57 Cal. 266; *Phelps* v. *Prusch*, 83 Cal. 628.) If such a purchaser was produced, the brokers were entitled to their commissions without reference to the consummation of the sale, unless the failure to consummate it, the title proving good, is chargeable to the purchaser. (*Middleton* v. *Findla*, 25 Cal. 81; *Blood* v. *Shannon*, 29 Cal. 395; *Phelan* v. *Gardner*, 43 Cal. 311; *Neilson* v. *Lee*, 60 Cal. 555;

*Phelps* v. *Prusch,* 83 Cal. 628.) If, on the other hand, the failure is caused by a defective title, the vendor alone is at fault, and the brokers are entitled to recover. (*Middleton* v. *Findla,* 25 Cal. 81; *Gonzales* v. *Broad,* 57 Cal. 225; *Phelps* v. *Prusch,* 83 Cal. 628.)

It appears that Cadwallader was a ready, willing, and able purchaser, but that he declined to complete the purchase of the property because of a defective title caused by the Bernhardt suit and the encumbrance of the Metzger mortgage.

The defendant was bound by the terms of his contract to convey a good title, and as it is evident from these causes that the title was not good, it devolved on him to make it so by curing the defect and removing the encumbrance within the time limited by the terms of the contract. This he failed to do, and as the time was not extended, Cadwallader was discharged from his obligation to purchase, and was entitled to the return of his deposit.

It is true that on the last day of the period of time fixed by the terms of the contract, and within which Cadwallader was to make payment of the balance of the purchase-money, Schiele tendered to him a grant deed, in due form, containing a covenant of warranty, and demanded payment; but there was no offer to remove the mortgage encumbrance, and if there had been, neither Metzger nor any one representing him was present to receive the money, and satisfy the mortgage. Furthermore, the suit commenced by Bernhardt against the defendant for an undivided interest in the property was still pending and undetermined.

The covenant of warranty contained in the deed tendered could not release the defendant of his obligation to convey a good title, for it was, at most, but a mere personal obligation, which Cadwallader was in no way obligated to accept.

But it is insisted that the brokers exceeded their authority in making the contract with Cadwallader by providing therein, "title to prove good, or no sale." Con-

ceding, for the purpose of this case only, that a good title is not implied by law in an executory contract for the sale of land, and further, that the brokers were not authorized to guarantee or insure title, still, it appears that they informed the defendant of the terms of the sale, and delivered to him a copy of the receipt or contract containing the same, which he agreed to and ratified, and upon Cadwallader being introduced to him by the brokers, he accepted him as the purchaser of the property on said terms.

The ratification referred to was not in writing, nor was it necessary, as between the defendant and the brokers, that it should be, for the reason that in so far as it affected the brokers it related to no interest in the land, but only to defendant's obligation to pay them their commissions when earned, in accordance with the terms contained in the contract of employment.

It is further contended that at the time defendant made the contract of employment with the brokers, he only had an option on the property, of which all parties were aware. This claim is disposed of by the finding of the court, and there is evidence to support it, that the brokers knew nothing about the condition of the title to the property.

Counsel for appellant insists with much earnestness that Cadwallader was not a ready or willing purchaser, for the reason that the evidence shows that he had intimate personal and business relations with Bernhardt, and instigated Bernhardt to bring the suit referred to against the defendant, for the purpose of enabling Cadwallader to withdraw from what proved to be an unprofitable bargain.

The only evidence on this point is that given by Cadwallader on his cross-examination, which is as follows: " Bernhardt and I were well acquainted; we were intimate at that time, and in several speculations together; were very friendly. At that time I had purchased with him a tract of land; we paid five hundred dollars deposit, fifteen thousand dollars to be paid in the

fall. I told him he ought to bring his suit against Schiele for damages, and not for specific performance. We had several talks about his suit against Schiele. We were very friendly. Bernhardt told me he was going to bring suit against Schiele, and I requested him to bring it in such a way as not to interfere with my contract with Schiele; after the suit was brought, he told me his lawyers said that was the only way it could be brought."

It may be true, as argued by counsel for appellant, "that it is not difficult to find a pretended purchaser who does not and cannot make the purchase, if by so doing a broker can earn his commissions," but the seller can always protect himself against such dishonest practices by stipulating in the contract of employment that no commissions are to be paid the broker unless the sale is consummated.

The production of a *bona fide* purchaser on terms satisfactory to the defendant was all that the brokers were required to do by the terms of their employment. This they did, and as the failure to consummate the sale is shown to have been caused solely by a defective title, for which the defendant alone is responsible, it follows that the brokers are entitled to recover their commissions.

The judgment and order should be affirmed, and we so advise.

VANCLIEF, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.