[Civ. No. 5744. Second Appellate District, Division Two.— November 21, 1929.]

J. A. CORNELIUS, Respondent, v. GRANVILLE HOLLAND et al., Defendants; NORTON H. EDWARDS, Appellant.

Philip Cohen and Alfred J. Smallberg for Appellant.

Howard F. Shepherd and B. L. Hoyt for Respondent.

BURNELL, J., *pro tem.*—Prior to the transaction which gave rise to this litigation the defendants Granville Holland and Norton H. Edwards, together with their respective wives, acquired title to a lot in the city of Beverly Hills, an undivided one-half interest therein being conveyed to each couple as joint tenants. Each of the defendants paid one-half of the purchase price of the lot, their agreement being that they would improve the same, each bearing one-half of the cost of such improvement, and would endeavor to sell the property so improved at a profit, and that all profits or losses arising from the improvement and sale should be equally divided between them. Prior to April 24, 1925,

Holland, with the knowledge and consent of Edwards verbally expressed, employed the plaintiff as a broker to sell the property. Evidencing such employment Holland signed a listing card describing the property, specifying the price asked as $35,000, stating the terms of sale and agreeing to pay a commission of five per cent of the sales price to the broker. The broker's name was not filled in, but the listing card was delivered so signed to one Eger, who was an employee of and a licensed salesman under the plaintiff, to whom he in turn delivered it. Thereafter the plaintiff, acting through his employee Eger, procured one Illitch—whom the court found was "ready, willing and able to buy said property"—to pay a deposit of $2,000 on account of the purchase price thereof and to sign an agreement to complete the purchase on the terms and for the price demanded by the sellers. To the deposit receipt containing this agreement was appended the following:

"I agree to sell the above described property on the terms and conditions herein stated and agree to pay the above signed agent as commission the sum of Seventeen Hundred and Fifty and no/100 Dollars $1750.00 Dollars, or one-half the deposit in case same is forfeited by purchaser, provided the same shall not exceed the full amount of the commission.

"GRANVILLE HOLLAND,<br>
"Seller.<br>
"PAUL L. EGER,<br>
"Witness."

Thereupon Illitch and the two defendants went into escrow, the sellers' instructions being signed by both Holland and Edwards and containing a direction to the escrowholder to pay a commission of $1750 "to Cornelius Realty Co. (Paul L. Eger) my agent in this sale . . . " About five months later the sale fell through by reason of a failure on the part of Holland and Edwards to complete the house under construction on the lot in question. The notice to the bank to cancel the escrow instruction was signed by Edwards and wife. Cornelius then brought this action against Holland and Edwards to recover his commission and judgment was rendered in his favor as against both defendants, from which judgment Edwards alone appeals.

From the foregoing recital of the facts as found by the court and as sufficiently established by the evidence it is clear that a partnership existed between appellant Edwards and his co-defendant Holland with regard to the lot (Civ. Code, sec. 2395), and that by signing the listing card Holland obligated the partnership to pay a commission on the sale of the partnership property (Civ. Code, sec. 2429). Furthermore, by signing the sellers' escrow instructions, which authorized the payment of the commission to plaintiff, referred to therein as "my agent," appellant not only ratified the previous act of Holland, but entered into a new and independent obligation to pay the commission. That everything was done by the broker to entitle him to the commission (*Gunn* v. *Bank of California,* 99 Cal. 349 [33 Pac. 1105]; *Oullahan* v. *Baldwin,* 100 Cal. 648 [35 Pac. 310]; *Tuso* v. *Green,* 194 Cal. 574 [229 Pac. 327]; *Smith* v. *Schiele,* 93 Cal. 144 [28 Pac. 857]), is not disputed by appellant, whose sole contention—the basis of every point he seeks to make for a reversal of the judgment—is that no agency was shown to have existed between the plaintiff and Eger, through whom the transaction was handled. This point is so utterly without plausibility that we find it difficult to believe that it is advanced for any purpose other than delay. Eger himself testified that he was a real estate salesman with the Cornelius Realty Company, which was the name under which the plaintiff conducted his business; the escrow instructions signed by appellant provided for payment of the commission "to Cornelius Realty Co. (Paul L. Eger) my agent in this sale." Plaintiff himself, were he sought to be bound by Eger's act, might defend upon the ground that Eger was not his agent, but we can conceive of no theory upon which the defendant in an action in which the plaintiff seeks recovery for services rendered by himself through his employee or agent, thereby in the strongest manner possible ratifying and adopting such acts (*Delano* v. *Jacoby,* 96 Cal. 275 [31 Am. St. Rep. 201, 31 Pac. 290]), can be heard to question the authority of the agent to represent the principal. A somewhat similar point was presented in *Nelson* v. *Colton,* 36 Cal. App. 69 [171 Pac. 701, 704], where the purchaser of certain land claimed that the sale was void for the reason that the broker's authority to sell was not in writing as required by section

1624, subdivision 5, of the Civil Code, and the court there said: "In its application to this case there is clearly no force in the point. Whether Crawford was legally authorized to make a binding contract for the sale of the land was a matter entirely between him and Colton, the owner of the land. The latter has not questioned Crawford's authority or act in that regard. On the contrary, he ratified all that Crawford did under his verbal authority by conveying the land to Nelson."

Appellant cites a number of cases as supporting his strange theory. All of them have to do with the relationship between the seller and the party claiming to have been the broker—none of them with the relationship existing between the broker and his salesman or agent. There is no provision of law that requires a real estate salesman to have written authority to act for and on behalf of the broker who employs him in order that such broker may take advantage of the fruits of the labor for which he recompenses his employee. Even if Eger, instead of being a salesman in plaintiff's service, had been an independent broker co-operating with him in the endeavor to procure a purchaser for defendants' property, with an agreement for a division of the commission between them, no writing would have been necessary as between Cornelius and Eger. Thus in *Gray* v. *Janss Investment Co.*, 186 Cal. 634 [200 Pac. 401, 404], which was an action by one broker against another to recover a portion of the commission paid to the latter, it was held: "There is no merit in the contention that the agreement between the plaintiffs and defendants is void because not in writing. The agreement is not one to pay a commission for the sale or exchange of real property. None of the parties to the agreement undertook to pay the other a commission. They obligated themselves in the first instance to do no more than cooperate in the exchange and divide the commissions earned therefor, and the subsequent modification of the original agreement, whether as pleaded in the plaintiff's complaint or as found by the trial court upon the issue raised by the evidence, left it still a cooperation agreement between broker and broker to divide commissions, and consequently does not fall within the inhibition of subdivision 6 of section 1624 of the Civil Code [citing cases]."

Judgment affirmed, and let there be added to the costs of appeal assessed against the appellant the sum of $100 as damages because of the frivolous nature of the appeal.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.