[Civ. No. 8549. Third Dist. Apr. 8, 1955.]

G. E. OAKS, Respondent, v. BRUCE BRAHS et al., Appellants.

Barr & Hammond for Appellants.

Tebbe & Correia for Respondent.

VAN DYKE, P. J.—Plaintiff and respondent brought this action to recover a broker's commission which he alleged was owing to him from defendants. By his complaint he joined as defendants others than defendants Bruce Brahs and his wife Barbara Brahs, but judgment was rendered against Bruce and Barbara only and they appeal therefrom.

The following facts appear: Respondent was a licensed real estate broker. On May 12, 1950, appellants executed a document whereunder they listed with respondent for sale a ranch consisting of approximately 2,000 acres. The quoted asking price was $145,000 and appellants agreed to pay respondent 5 per cent of the selling price if he succeeded in making a sale of the property. The listing was taken by a Mr. Linville, a licensed real estate salesman working for respondent. Negotiations for the sale of the property were handled by Mr. Linville. Concerning his efforts to sell the property Mr. Linville testified as follows: Upon hearing that the Brahs ranch was for sale he contacted Bruce Brahs with whom he looked over the property which to some extent he already knew. He obtained the listing agreement at that time, having in mind a Mr. Taylor whom he thought would be interested in buying the property. On the next day he contacted Mr. Taylor who was a cattleman and was interested in acquiring a cattle ranch. He described the placed thoroughly to Mr. Taylor, giving him detailed information concerning the improvements, the plantings, the capacity of the property to sustain a cattle raising business and the possibility that the owners might take other property in trade for a part of the purchase price. He asked Taylor to go with him to view the property, but Taylor, while expressing his interest, did not go, saying he was too busy at the time. Linville promptly telephoned and also wrote to Bruce Brahs, telling him of Taylor's interest and of his interview with him, saying he thought Taylor might soon go to visit the property, and asking Brahs, if he did so, to show the property to him. Brahs replied that he would fully cooperate if Taylor appeared. A considerable time passed before Taylor went to the property. During this time Linville saw Taylor on several occasions and made several efforts to sell the property to him, urging him at all times to either go visit the property with Linville or go to the property by himself and see it. He told Taylor he felt sure that if he went and looked at the property he would find it to be just what he wanted. Linville had caused the property to be advertised

in the local papers and respondent had talked with a number of people whom he thought might be interested. Without going further into details, it appears that Taylor ultimately went to the ranch by himself and negotiated directly with Brahs, with the final result that he purchased the ranch.

The trial court found that the broker had been the procuring cause of the sale and accordingly gave judgment against Bruce and Barbara Brahs. Said the trial court in a memorandum opinion:

". . . In these brokerage commission cases, the cause is usually . . . a mental condition or interest created in another person's mind that becomes a motivating force that causes him to act, and the motivating force continues without cessation, until it brings about the consummation of the act, and the person who created such interest in the other person's mind that resulted in the act is said to be the procuring cause of the act."

After stating the evidence related above the trial court continued:

". . . There is no evidence that Taylor had any thought or notion of buying this ranch before the broker contacted him. His interest was so much aroused that he promised to go 'to look at it.' . . . A force was at work in his mind. Who created that with regard to the Big Springs Ranch? Did this interest ever subside? True he talked with Frank Brahs about the ranch. Can it be said this was the sole cause of his going to look at the ranch and ultimately buy same. Did not the broker first create the interest in his mind, did this not continue, and perhaps Frank Brahs did augment and add to this interest the broker had created? There is no evidence that this original interest had subsided, and Frank Brahs created it anew. He said before he left Shasta County he was coming up to look at the ranch. Under this evidence the court will find the broker was the procuring cause of the sale."

We agree with the trial court that the evidence was amply sufficient to justify the conclusion that the broker was the procuring cause of the sale. Upon that sale being consummated, even though the final consummation resulted from negotiations directly between the buyer and the seller, the commission had been earned and must be paid.

In support of the appeal appellants urge that the judgment must be reversed because Mr. Linville, respondent's salesman, was not authorized in writing to accept the listing

for his broker. There is no merit to the point. (*Cornelius* v. *Holland,* 102 Cal.App. 136, 139-140 [282 P. 539].)

Appellants further urge that there was no valid contract between the broker and themselves; that the listing document constituted only an offer which could only ripen into an obligation by performance which they contend did not occur. We have hereinbefore held that the broker had accepted by performance. However, this view of a listing document executed by owners is not in accord with California law. (*Baumgartner* v. *Meek,* 126 Cal.App.2d 505, 508-509 [272 P.2d 552].) We think what has been said sufficiently disposes of the appeal and that it is unnecessary to specially comment upon a number of minor contentions made in the briefs.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied May 2, 1955, and appellants' petition for a hearing by the Supreme Court was denied June 2, 1955.