[Civ. No. 21172. Second Dist., Div. One. Jan. 30, 1956.]

VINELAND HOMES, INC. (a Corporation), Plaintiff and Respondent; ARTHUR K. EHRLICH, Cross-Defendant and Respondent, v. MAX BARISH et al., Defendants and Appellants; ROBERT L. SWANSON, Defendant and Respondent.

Harry A. Franklin for Defendants and Appellants.

McClean, Salisbury, Petty & McClean for Plaintiff and Respondent.

Rowland P. Fontana for Cross-Defendant and Respondent.

Stanley G. Pearson for Defendant and Respondent.

WHITE, P. J.—Defendants Max Barish, Charles Mirken, Sam Wishnow and Ben Wishnow have appealed from a judgment against them, as follows:

That the clerk of the superior court pay to plaintiff Vineland Homes, Inc., hereinafter referred to as "Vineland," the sum of $5,742.75 deposited with said clerk by defendant Bank of America and that appellants have no right, title or interest in or to said funds.

That the appellants pay to Vineland the sum of $16,942.30 as damages for breach of contract for the sale of real property, $235.70 costs of suit, and $4,000 as attorneys' fees to date of judgment, and that the court reserve jurisdiction to award additional attorneys' fees to Vineland in the event of an appeal or other proceedings subsequent to entry of judgment.

That the appellants pay to cross-complainant Robert L. Swanson, doing business as Swanson Realty Company, the sum of $1,462.50 as real estate commission, and in addition thereto, the sum of $300 as attorney's fees to date of judgment, and costs of suit $17.40; and that the court reserve jurisdiction to award to Swanson additional attorneys' fees in the event of further proceedings.

Ben Wishnow, as cross-complainant, has also appealed from the portion of the judgment providing that he take

nothing by his cross-complaint, that he pay to cross-defendant Ehrlich $300 as attorneys' fees to date of judgment; and that the court reserve jurisdiction to award additional attorneys' fees in the event of further proceedings.

The instant action arose out of an agreement for the purchase by Ehrlich, Vineland's assignor, and the sale by appellants of a tract of land. The facts will be detailed in connection with the assignments of error to which they are pertinent.

Appellants urge that it was error to award to Vineland the $5,742.75 deposited with the clerk of the court by the Bank of America. The amount is the remainder of $6,000 deposited with the Bank of America, after deduction of the bank's charges and expenses.

Instructions to the Bank of America, signed by Ehrlich, accompanied the $6,000 deposit and provided that it and the balance of the purchase price, $52,500 thereafter to be paid into escrow, should be paid to appellants when the title to the tract "free and clear from any and all encumbrances" was "vested in: Arthur K. Ehrlich, or nominee." Appellants refused to sign any escrow instructions or deed which did not reserve oil and mineral rights, and the balance of the purchase price was not paid into escrow. Ehrlich's instructions to the Bank of America further provided: "If you are unable to comply with these instructions on or prior to May 14, 1953, you will comply as soon thereafter as possible unless a written demand for return of money or instruments by a party to this escrow is received by you subsequent to such date and prior to the recording of any instrument provided for herein." The bank received a demand from Ehrlich for payment to him and one from appellants for payment of the money to them, but, under other provisions of Ehrlich's instructions, paid the money to the clerk of the court.

■ The money was deposited with the buyer's instructions. The conditions of his instructions were never complied with. Buyer, therefore, retained ownership of the money. His failure to deposit the balance in accordance with the agreement did not transfer ownership of the deposit to the sellers. Buyer continued to own the money and was entitled to withdraw it after the expiration of the escrow. (*Kellogg v. Curry*, 101 Cal.App.2d 856, 859 [226 P.2d 381]; *Hildebrand v. Beck*, 196 Cal. 141, 145-146 [236 P. 301, 39 A.L.R. 1076]; *Norris v. San Mateo County Title Co.*, 37 Cal.2d 269, 273 [231 P.2d 493].)

It is contended by appellants that the court erred in allowing interest on the money deposited by the vendees in the escrow. The judgment mentions no interest. An examination of the findings and conclusions, however, shows that interest on the amount deposited in escrow is included in the $16,942.30 awarded to respondent as damages occasioned by appellants' breach of contract. Damages will be discussed later.

Appellants urge that Vineland was entitled to nothing in the instant action because the alleged oral assignment to it from Ehrlich was void and admission of evidence thereof was prejudicial error. (Code Civ. Proc., §§ 1971 and 1973.)

The assignment was alleged in the complaint of Vineland and Ehrlich. Appellants demurred thereto on several grounds including the misjoinder of parties plaintiff "in that the plaintiff Arthur K. Ehrlich does not have any title nor interest in and to the subject matter of the complaint." Demurrer for misjoinder of parties plaintiff was sustained and Vineland, as sole plaintiff, filed an amended complaint again alleging said assignment. Appellants in their answer denied the allegation of assignment. However, by the counterclaim which is a part of that answer, they sought damages alleged to have been caused by a breach of contract by Ehrlich, "the plaintiff's assignor." Appellant Ben Wishnow filed a cross-complaint against Vineland and alleged therein that Vineland "assumed and agreed to be bound by the terms and conditions of said contract on their part to be performed." His prayer is for the $6,000 deposited in escrow and for $8,025 damages. Each of appellants testified that, in the event of judgment for Ben Wishnow on his cross-complaint, the amount recovered would be divided equally between them. Vineland, in its answer to the cross-complaint, admitted the assignment and that it "assumed the obligations to be performed by the purchaser thereunder."

■ Not only have appellants raised no issue regarding the form or validity of the assignment by Ehrlich to Vineland, but in their pleadings and testimony they have relied upon the assignment. The admission of evidence thereon was not prejudicial.

Since the escrow instructions of Ehrlich and appellants were materially different, the instructions are not a contract between them. Their rights against each other depend upon their mutual agreement.

Before February 21, 1953, appellants gave an oral listing on the tract to George McLoney and Paul Fishnich, real

estate brokers, who orally agreed with Swanson that if he procured a purchaser for the property they would split their real estate commission with him.

February 21, 1953, Swanson procured a written offer of $57,500 from Ehrlich and submitted it to appellants through their brokers and Ben Wishnow. That offer was made on a printed form of "Deposit Receipt" in which had been inserted "Seller guarantees subdivision is a matter of record and approved by proper authorities." It was rejected by appellant Ben Wishnow, who then made a counteroffer also on a printed form of deposit receipt, signed "B. Wishnow, Seller" and by Swanson and McLoney as brokers before said brokers submitted it to Ehrlich, who signed it as buyer on February 24, 1953. In lieu of the statement above quoted from the rejected offer, the one made by Ben Wishnow and accepted by Ehrlich included the statement that "Map is ready to file . . . All engineering done to date paid for by Seller." In both, the property is described as "Lots 1 to 76 Tract 18319."

Appellants state as one ground for reversal that the deposit agreement of February 24, 1953, "was void, unenforceable and ineffectual" under the provisions of sections 11538, 11539 and 11541 of the Business and Professions Code, prohibiting sales by reference to unrecorded subdivision maps. The decisions relied upon by appellants did not consider the 1929 amendment, now section 11540 of the Business and Professions Code, providing that "any . . . contract to sell made contrary to the provisions of this chapter is voidable at the sole option of the . . . person contracting to purchase . . . but the . . . contract to sell is binding upon any assignee or transferee of the . . . person contracting to purchase . . . and upon the person contracting to sell. . . ."

Under the provisions of section 11540 of the Business and Professions Code, the fact that the subdivision map was not recorded is not a defense available to appellants in the instant action.

Appellants contend that Ben Wishnow had no power or authority to bind his coowners to any agreement to sell real property.

The court found:

"2. That defendants Max Barish, Charles Mirkin, Ben Wishnow and Sam Wishnow at all times mentioned herein were co-partners engaged in the business of buying, subdividing, improving and selling real property; that said defendants are hereinafter sometimes referred to as 'defendant-

partners'; that at all times herein mentioned, defendant Ben Wishnow was the managing partner of said co-partnership.

. . . . . . . . . . . .

"10. That on the 18th day of October, 1951, defendant-partners purchased" the tract here involved.

"11. That title to said real property was vested in said partners as follows: 'Ben W. Wishnow, Sam Wishnow, Max M. Barish, and Charles Mirkin, each as to an undivided one-fourth interest as his separate property.'

"12. That on or about said 18th day of October, 1951, defendant-partners entered into an oral agreement with respect to said real property whereby they agreed to contribute equally for the expenses of said property, including real property taxes and engineering expenses, and to share equally the profits, if any, from the sale or use of said property; that defendant-partners contributed equally to the purchase price of said real property.

"13. That said defendant-partners purchased said real property for the purpose of selling or subdividing.

. . . . . . . . . . . .

"18. That on the 24th day of February, 1953, defendant-partners, by Ben Wishnow, a co-partner and agent of said co-partnership, acting within the scope of his authority and for and on behalf of said partnership and the co-partners thereof, entered into a written agreement with cross-defendant Arthur K. Ehrlich, whereby said Arthur K. Ehrlich agreed to buy, and defendant-partners agreed to sell, said real property, described in said agreement as Lots 1-76, inclusive, Tract 18319, in the City of San Fernando, County of Los Angeles, State of California; said real property is hereinafter sometimes referred to as 'the tract'; that Plaintiff's Exhibit 2 is a true copy of said agreement.

"19. That prior to executing said agreement on behalf of defendant-partners, defendant Ben Wishnow contacted each of his co-partners Max Barish, Charles Mirkin and Sam Wishnow, advised each of said co-partners of the terms of the proposed sale and asked for their respective approvals thereof; that each of said co-partners Max Barish, Charles Mirkin and Sam Wishnow orally approved said sale of said tract prior to the execution of said agreement by defendant Ben Wishnow.

"20. That after said agreement had been signed by defendant Ben Wishnow, it was presented to cross-defendant Arthur K. Ehrlich for signature; that said Arthur K. Ehrlich

signed said agreement on February 24, 1953, agreeing to pay the sum of $58,500.00 for the tract, and at that time and place paid the sum of $1,000.00 to cross-defendant Robert L. Swanson, doing business as Swanson Realty Co., for the account of defendant-partners as a partial payment of, and to apply against, the purchase price of said tract."

Appellants contend that they were coowners, not partners, and that the findings to the contrary are not supported by the evidence. They urge that, as a matter of law, "the fact that defendants purchased the San Fernando property, with their own individual funds, paid their proportionate shares of the expenses of upkeep and maintenance, caused the property originally vested in them as tenants in common to remain such."

They rely upon: Corporations Code, section 15008(3), providing that "Any estate in real property may be acquired in the partnership name"; Civil Code, section 686, which provides that "Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest . . . or unless acquired as community property"; and *Estate of Horn*, 102 Cal.App.2d 635, wherein, at page 640 [228 P.2d 99], Mr. Justice Vallée, speaking for the court, said: "Section 686 means that if an estate is conveyed or transferred and it is not expressly declared in the conveyance or transfer to be an estate in joint tenancy, or in partnership for partnership purposes, or unless acquired as community property, it will be held by the grantees or transferees as tenants in common." That language, however, is dicta as shown by the portion of the decision next quoted: "Obviously section 686 does not have the effect of creating a tenancy in common in a case such as the present where it was expressly declared in the attempted transfer to be a joint tenancy."

Section 686 provides that joint tenancy is required to be expressly "declared in its creation." It does not provide that property cannot be acquired "in partnership, for partnership purposes" without such a declaration in the conveyance or transfer.

Appellants cite *Grant* v. *Bannister*, 160 Cal. 774, at page 781 [118 P. 253], as further authority for the statement that a deed to partners individually, "if unexplained, vests in them undivided interests as tenants in common." In that action, the deed purported to be to the grantees as tenants in common and declared that it was made "in fulfillment

of the partnership agreement.'' The court there found that plaintiff and defendants owned a quarry as tenants in common and not as partners. In that decision it appears, however, that plaintiff and defendants had previously signed documents and done other acts giving the ambiguous deed the meaning found by the court. *Grant* v. *Bannister, supra,* does not support appellants' position in the instant action.

The deed to the four appellants ''each as to an undivided one-fourth interest as his separate property,'' and the fact that each paid his proportionate share of the cost from his own funds do not, as a matter of law, establish that the tract was held by them as tenants in common and not as partners.

In *Cornelius* v. *Holland,* 102 Cal.App. 136 [282 P. 539], the written listing for sale of real estate signed by Holland alone was held to have been the act of the partnership of the record owners of real property previously acquired by them, an undivided one-half interest therein being conveyed to each couple as joint tenants, upon an oral agreement that each couple would pay one-half the purchase price and one-half the cost of improvement, and profits or losses upon a sale of the property would be divided equally between them.

As said by this court in *Lusher* v. *Silver,* 70 Cal. App.2d 586, 588 [161 P.2d 462]: ''In the last analysis the *fact* of partnership depends upon the intention of the parties. To determine this intent not only the words of the agreement itself, but the actions and conduct of the parties may be considered.'' In *Lusher* v. *Silver, supra,* plaintiff and defendant had orally agreed to ''go together and buy ourselves properties and split the profits on them''; they had acquired titles to the properties in the names of the defendant and his wife; and the properties were found to have been acquired by plaintiff and defendant as partners, for partnership purposes.

The existence and scope of the partnership are *facts* to be determined by the trial court. While each of the alleged partners in the instant action expressly denied that the tract was owned by them as partners, there is evidence to the contrary.

Max Barish testified that: he had never seen the conveyance to him of his interest in the tract; ''Mr. Wishnow handled the transaction and he must have gotten it''; they had no written agreement regarding the property; they agreed to and did contribute equally to the purchase and

expenses of the property; they hired Mr. Gann to do the engineering necessary to subdivide and paid for his services the same way, "it was distributed among us all"; they agreed to divide the profits equally; they "were already in the building business and this property was purchased either for resale at a profit or to build on it if conditions warranted"; he personally claims his share of the $6,000 deposited in escrow and he "imagines" the others would; Mr. Ben Wishnow managed this property, took care of taxes, dealt with Paul Fishnich who had handled the affairs for the organization for quite some time; Ben Wishnow handled the listings of the properties and "he had my consent to sell the property if we got the right price for it"; in August, 1953, after the instant action was commenced he sold his interest in the tract to the other appellants, retained his oil rights, and received a promissory note for it; Monogram Home Builders was grantee in the deed then signed by him, which recited "Tax: None."

Ben Wishnow testified that: he had engaged in the subdivision and building business for about eight or nine years; in 1948 and 1949 he and the other appellants were members of a limited partnership doing business under the name of Monogram Home Builders and had filed certificates listing him as one of the general partners; that the 1949 certificate authorized any one of the general partners to execute any and all instruments or documents pertaining to the business of the partnership, but the general partners never did business that way; appellants were named as limited partners in some of the certificates filed; the purposes set forth in the various certificates included the subdivision of certain tracts other than the one involved in the instant action; the escrow through which appellants purchased the tract was closed and conveyance made in the names of the four individuals on October 18, 1951; on the same day he, as one of the general partners of Monogram Home Builders, a copartnership, signed and acknowledged a statement on the subdivision map of the tract that Monogram Home Builders, a copartnership, "are the owners of or are interested in" the tract; but that "not Monogram Home Builders was interested . . . the partners was interested, like Charles Mirkin, Ben Wishnow, Sam Wishnow and Max Barish . . . that was the interest in the land . . . they never was partners . . . Never. They was investors, not partners . . . That was a separate piece of ground, we bought it . . . There never was no partners in the Monogram. They was only partners

in that piece of ground at that time . . . They were investors.'' Ben Wishnow further testified that they bought this property to subdivide and build on; they contributed equally to the purchase and expenses, and agreed to divide equally the proceeds from the sale of the property; that subdividing and developing this particular property was a business venture; and he testified: ''We don't claim separately . . . The whole partners involved and the whole claiming for the $6,000.''

Later, he testified that he does not know any difference between investors, limited partners and associates; all he knows is they put up money for various building deals and they got their percentages; Monogram Home Builders was a firm established for credit purposes; the certificate of limited partnership was amended from time to time; titles to the properties developed by Monogram Home Builders were acquired in the same manner as the tract involved in the instant action and were later conveyed by the coowners to the partnership; the bills for the surveying done before February 24, 1953, came to Monogram Home Builders, the partnership; Ben Wishnow paid them from his own pocket and then they (the other appellants) returned the money to him; plaintiff's Exhibit 17 is a grant deed from appellants and Albert Strasner (to whom appellants had conveyed an undivided one-fifth interest in the tract) to Monogram Home Builders, a partnership, and recited ''no tax''; when the individuals conveyed the tract to Monogram Home Builders ''we did not have to get money. We had that investment there.''

Mirkin testified that the four appellants acquired the tract October 18, 1951, and later orally agreed with Mr. Strasner to hold an undivided one-fifth interest for him; Monogram Home Builders was synonymous with the Wishnows and Strasner; each of the appellants contributed equally to the purchase and expenses of the tract and each was to share equally in the profits; he was first a partner in Monogram Home Builders about five, six or seven years ago; he has been a partner therein ''in various ventures—not all of them—''; he ''had an interest in a building project—a subdivision'' in partnership with the other appellants and Albert Strasner; he claims a one-fifth interest in the $6,000 deposited in escrow in this transaction; Ben Wishnow, Sam Wishnow and Albert Strasner ''have always represented us as one unit''; they have usually been the so-called general partners and the others were the limited partners; he did

not pay "much attention to the actual mechanics"; "I had complete confidence in my partners, so to speak."

Sam Wishnow testified that he is a partner in Monogram Home Builders; he is the son of Ben Wishnow; there was no written agreement between the four appellants as co-owners of the tract; the four of them purchased the property and agreed to and did contribute equally to the purchase price, expenses, taxes and engineering costs; they agreed to divide equally the profits derived from the sale or use of the property; the tract was bought in order to subdivide it; the subdivision of real property was their business; he claims a one-fifth interest in the $6,000 which was in escrow with the Bank of America and is now on deposit with the clerk of the court: Ben Wishnow's cross-complaint was filed on behalf of the five of them.

Strasner testified that they first attempted to develop this property in the latter part of 1952; in 1951 the three general partners of Monogram Homes just went ahead and saw that the tract was bought in the names of the individuals and that the surveying was done and it was not set up as a company until about August, 1953; they made every effort to finance the program; money was tight; they decided it was impossible to obtain loans at that time, to shelve the entire program and possibly to try to market and sell it; after the escrow did not go through in 1953 it seemed like loans had eased up somewhat and they got financing for putting houses on there and did not make any more attempts to sell.

The testimony above summarized and other facts and circumstances disclosed by the record amply support the finding that the tract was acquired and owned by appellants "in partnership, for partnership purposes." That Ben Wishnow was the managing partner and acted within the scope of his authority when he entered into the written agreement of February 24, 1953, to sell the tract to Ehrlich on the terms and conditions therein stated is also supported by the evidence.

 Appellants contend that it was error to award damages for breach of contract by sellers, because of buyer's letter demanding the return of the amount deposited with the Bank of America. The agreement of February 24, 1953, was not cancelled by respondent's withdrawal of his money deposited in escrow pursuant thereto. The rights of the parties are governed by the deposit agreement of February 24, 1953. It provides that "an escrow shall be opened at

Lane Escrow Company within 60 days''; that the brokers received from Ehrlich $1,000 "as deposit and part payment on the total purchase price of $58,500 and $6,000, including $1,000 deposit, to be put in escrow when opened. Bal. of $52,500 on or before 60 days.''

The $1,000 was deposited by the brokers with Lane Escrow Company but instructions to that company were not signed by buyer or sellers. On March 14, 1953, all parties agreed that the escrow should be opened at Bank of America, instead of Lane Escrow Company, Lane Escrow Company's check for $1,000 to replace Ehrlich's check was deposited with respondent's check for $5,000 and Ehrlich's escrow instructions to the Bank of America.

The first obligation assumed by buyer and sellers under the terms of their agreement of February 24, 1953, was to open an escrow within 60 days. This was done by respondent.

Sellers, however, failed and refused to comply with that obligation and refused to sign any instructions or conveyance in accordance with their agreement. Sellers were therefore in default 60 days from February 24, 1953. Although respondent left the $6,000 on deposit without demanding its return until May 15, appellants had not signed any escrow instructions which complied with their agreement, and appellants were in default from April 25, 1953. The beginning of the 60 days within which respondent was to deposit the balance of the purchase price is not definitely stated in the agreement, but, considering the agreement as a whole, there being no provision that the 60 days allowed for the deposit of the balance of the purchase price shall run concurrently with the 60 days allowed for the deposit of the $6,000 in the escrow, it is clear that the intention of the parties was that the 60 days for deposit of the balance of the purchase price should start upon the opening of the escrow, and therefore did not expire until May 14, 1953.

"Performance by the party not in fault is always excused by the wrongful refusal to perform by the other party. The rights of the party in fault come to an end, but the contract is nevertheless kept in force so as to protect the rights of the innocent party and to enforce the obligations of the delinquent party." (*Central Oil Co.* v. *Southern Refining Co.*, 154 Cal. 165, 167 [97 P. 177].)

"If a party to an obligation gives notice to another before the latter is in default, that he will not perform the same upon his part, and does not retract such notice before the

time at which performance upon his part is due, such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former party.'' (Civ. Code, § 1440.)

Appellants' refusal to execute escrow instructions or conveyance without reservation to themselves of oil and mineral rights leaves no doubt that, had respondent placed the full amount of the purchase price in the escrow started by it, the result of the escrow would have been the same. The formal tender of the full purchase price would have been a useless act. The law does not require the performance of useless acts. (*Ruzich* v. *Boro*, 58 Cal.App.2d 535, 541 [137 P.2d 51]; *Ehrhart* v. *Mahony*, 43 Cal.App. 448, 451 [184 P. 1010].)

The contract of February 24, 1953, was breached by appellants by their refusal to perform. That refusal was not withdrawn. Time was of the essence of the agreement. From and after April 25, 1953, respondents had the right to commence an action against appellants for damages.

Appellant urges that it was error to award $16,942.30 damages for breach of contract for sale of the tract. That amount includes the following:

Charges and expenses deducted from respondent's money in escrow, for examining title and preparing necessary papers . . . . . . . . . . . $ 257.25

Interest on $1,000 from the date of payment into escrow by Ehrlich . . . . . . . . . . . . . . . . . . . 120.75

Interest on $5,000 from the date of payment into escrow by Vineland . . . . . . . . . . . . . . . . . . 584.30

The difference between—

Fair market price on April 25, 1953 . . . . . . . . . . . . . . . . . . . . . $74,480.00

And the contract price . . . . . . . . 58,500.00 15,980.00

TOTAL damages awarded . . . . . . . . . . . . . . $16,942.30

The award was computed as required by section 3306 of the Civil Code. That section, being a special provision, prevails over general provisions relating to damages. Interest was properly allowed on the money which respondent could not use because of its deposit in escrow in reliance upon the contract.

Appellant further urges that the court's finding that the market value of the tract on April 25, 1953, was $74,480 is not supported by the evidence. The amount required to compensate for breach of contract is a fact to be determined by the trial court and where there is any substantial evidence

to support the award made, an appellate tribunal cannot substitute its judgment for that of the duly constituted arbiter of the facts. While the evidence of value in the instant action is highly conflicting, it amply supports the trial court's award to respondent, Vineland.

The portion of the judgment requiring that appellants pay to Vineland $4,000 attorneys' fees is attacked by appellants. The agreement of February 24, 1953, provides: "If action be instituted on this agreement I agree to pay such sums as the court may fix as attorneys' fees." The main body of the agreement is signed by the real estate salesman. Below that appears: "I agree to purchase the above described property on the terms and conditions herein stated," which is signed by Arthur K. Ehrlich, purchaser. And below that is "I agree to sell the above described property on the terms and conditions herein stated . . ." signed by B. Wishnow, seller. Appellants in their counterclaim set forth the provisions relied upon by Vineland as authorizing the award of attorneys' fees, allege the reasonable value of the services of their attorney to be $2,500, and pray for that amount. On appeal, appellants call attention to the fact that the sellers' signature is disconnected from the portion of the printed form of deposit receipt which includes the provision for attorneys' fees; that the agreement to pay attorneys' fees was only by buyer for the benefit of sellers. Buyer's signature likewise is disconnected from the main body of the deposit receipt. Sellers have already given the agreement the practical construction that buyer is bound thereby to pay their attorneys' fees. ▮ It seems reasonable that the court should interpret the agreement as it was interpreted in the pleadings of all parties, that the defaulting party should pay the attorneys' fees of the parties damaged by the default.

▮ "In determining the amount of a reasonable fee the trial court is permitted to consider various factors: The nature of the litigation, its complexity, the nature and extent of the contest, the amount involved, the financial circumstances of the parties, the skill required, the professional standing and reputation of the . . . attorneys . . . are some of the relevant matters to be considered." (*Pope* v. *Pope*, 107 Cal.App.2d 537, 539 [237 P.2d 312] ; *Dietrich* v. *Dietrich*, 41 Cal.2d 497, 506 [261 P.2d 269].)

Four thousand dollars is not, as a matter of law, an unreasonable fee for the services rendered by Vineland's attor-

neys in the instant action. No abuse of discretion is shown in respect to this award.

 Ehrlich, with Vineland, filed the complaint in the instant action. When demurrer for misjoinder of parties plaintiff was sustained, Vineland alone filed an amended complaint. Ehrlich did not cease to be a party to the action for long. Ben Wishnow promptly filed a cross-complaint against Ehrlich and others seeking $8,025 damages. Ehrlich, therefore, has been a party to the action from its beginning up to the present time, except during the few days between the filing of the amended complaint and the filing of the cross-complaint. Judgment in his favor for attorneys' fees was not error.

The judgment, from which the instant appeal was taken, provides further that appellants pay to Swanson $1,462.50, real estate commission, together with $300 attorneys' fees, and reserves jurisdiction to award further attorneys' fees in the event of proceedings after entry of judgment. Allegations concerning appellants' obligation to pay these amounts were made in Swanson's cross-complaint, admitted by appellants' answer thereto, and by the cross-complaint of Ben Wishnow (the recovery on which was to be divided between all the appellants).

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.

A petition for a rehearing was denied February 17, 1956, and the petition of defendants and appellants for a hearing by the Supreme Court was denied March 21, 1956.